IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW REYNOLDS, )<br>Plaintiff; )<br> )<br>vs. )<br> )<br> )<br>WILLERT MFG. CO., LLC, )<br>Defendant. ) | CIVIL ACTION<br><br>No.: 5:21-cv-01208 |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to this Court's Policies and Procedures, Plaintiff Matthew Reynolds respectfully submits the following statement of material facts to which there is no genuine issue to be tried.

**Plaintiff Was a Medical Marijuana Patient**

1. At all times relevant to this action, Plaintiff was a medical marijana patient. Request for Admission ¶ 25, attached hereto as Exhibit 2; Affidavit of Matthew Reynolds ¶ 21, attached hereto as Exhibit 3.

2. At all times relevant to this action, Plaintiff suffered from severe anxiety disorder; has met the requirements for medical marijuana certification; and is a resident of Pennsylvania. Exhibit 2 ¶¶ 26-29; Exhibit 3 ¶ 21.

3. On June 27, 2020, Plaintiff received the following notice from the Pennsylvania Office of Medical Marijuana (the "OMM"), "Your patient certification has been issued by your practitioner." Thereafter, the OMM sent Plaintiff a Medical Marijuana Patient Identification Card with an issuance date of July 7, 2020 and an expiration date of July 6, 2021. True and correct copies of this correspondence and Patient Identification Card are attached hereto as Exhibits 4 and 5.

4. At all times relevant hereto, Plaintiff used his valid and unexpired Patient Identification Card to purchase medical marijuana exclusively from Pennsylvania medical marijuana dispensaries. Exhibit 3 ¶¶ 22-23.

5. At all times relevant to this action, Plaintiff kept his marijuana in the original package in which it was dispensed, maintained his Patient Identification Card on his person when he consumed marijuana, and did not "smoke" marijuana- instead, he consumed it in a manner consistent with the PMMA. Exhibit 2 ¶¶ 30-31; Exhibit 3 ¶¶25-27.

**Plaintiff's Employment with Defendant**

6. On October 15, 2020, Plaintiff was offered employment with Defendant as an overtime-exempt Maintenance Manager. Exhibit 2 ¶ 48; Offer of Employment Letter, attached hereto as Exhibit 6.

7. Plaintiff worked in this role for the Defendant from October 16, 2020 through November 5, 2020. Exhibit 2 ¶ 1; Exhibit 3 ¶ 4.

8. At no point between October 16, 2020 through November 5, 2020 did Plaintiff receive negative performance reviews or evaluations, reprimands, coachings to remediate performance deficiencies, or was he placed on a performance improvement plan. Exhibit 2 ¶¶ 2-7; Exhibit 3 ¶¶ 5-9.

   a. **Plaintiff's Duties Did Not Involve the Operation or Control of High-Voltage Electricity, Chemicals, or a Public Utility and Did Not Involve Performing Work at Heights or in Confined Spaces.**

9. Plaintiff's job responsibilities as a Maintenance Manager was to oversee the repairs, installations, and upkeep of various machines and equipment, and to supervise technicians on all shifts. Exhibit 2 ¶ 47.

10. As a maintenance manager, Plaintiff was told that his job was "not to turn a wrench, but to manage the people who would be turning wrenches." Exhibit 3 ¶ 10.

11. This position did not involve the operation or physical control of chemicals, high-voltage electricity, or any other public utility. Exhibit 3 ¶ 11.

12. This position did not require Plaintiff to be licensed to operate or control high-voltage electricity or chemicals. Exhibit 2 ¶¶ 49-50; Exhibit 3 ¶ 20.

13. This position did not require Plaintiff to possess an electrical journeyman's certificate. Exhibit 2 ¶ 51; Exhibit 3 ¶ 19.

14. Defendant did not provide Plaintiff with thermography equipment, infrared thermometers, arc flash suits, rated screwdrivers, rated gloves, or high-voltage circuit breaker disconnecting poles. Exhibit 2 ¶¶ 57-61; Exhibit 3 ¶¶ 13-18.

15. Defendant's Douglassville facility does not use equipment at or in excess of 115,000 volts and all electrical equipment with voltage in-excess of 601 volts was maintained by non-Defendant employees. Exhibit 2 ¶¶ 62-63; Exhibit 3 ¶ 12.

16. Plaintiff did not operate or control high voltage electricity. Engineering Expert Report, attached hereto as Exhibit 11.

17. Plaintiff's duties did not include the mixing or processing of chemicals. Exhibit 2 ¶ 64.

18. Plaintiff's duties did not involve the operation or control of a public utility or involve work to be performed in confined spaces or at heights. Exhibit 2 ¶¶ 65-67.

**Plaintiff's Medical Marijuana Usage**

19. At no point did Plaintiff consume medical marijuana during working hours or within eight (8) hours of the start of a shift. Exhibit 2 ¶¶ 19, 22-24; Exhibit 3 ¶¶ 24, 29.

**The Drug Screen and Termination**

20. At hire, Plaintiff was informed that he would be subjected to a pre-employment drug screen. Plaintiff's Offer Letter, attached hereto as Exhibit 6.

21. This drug screen was scheduled for October 28, 2020. Plaintiff reported for this drug screen on this date, identified himself as a medical marijuana patient and produced his medical marijuana card. Exhibit 2 ¶ 32; Exhibit 3 ¶¶ 30-31; Plaintiff's Termination Letter, attached hereto as Exhibit 8.

22. During this drug screen, Plaintiff was tested for a THC metabolite and not for active THC. Consequently, Defendant does not know whether Plaintiff had a blood content of more than 10 nanograms of active THC per milliliter of blood in serum on October 28, 2020. Exhibit 2 ¶¶ 12,14; Toxicology Expert Report, attached hereto as Exhibit 10.

23. The results of the drug screen states, "D-THC-Marijuana Metabolite 50/15." Exhibit 2 ¶ 11; Drug Screen Letter, attached hereto as Exhibit 9.

24. The results of the drug screen (Willert0046) were relayed to Defendant on or after November 3, 2020 and are the Defendant's sole source of knowledge that Plaintiff had any amount of THC in his system. Exhibit 2 ¶ 10; Exhibit 8.

25. On November 5, 2020, Plaintiff was informed by his supervisor, Jack Bonsky, that he was being fired because of the presence of marijuana in his system and Plaintiff received a Termination Letter (Willert0008) to this effect. Exhibit 2 ¶¶ 8, 33-34; Exhibit 3 ¶ 32; Exhibit 8.

26. The Termination Letter does not reference any alleged performance deficiencies. Exhibit 2 ¶ 9; Exhibit 8.

27.     Defendant does not alledge (and the Termination Letter does not state) that that Plaintiff manufactured, dispensed, possessed, purchased, or sold a controlled substance on Defendant's premises. Exhibit 2 ¶¶ 16-18, 20-21; Exhibit 8.

28.     Plaintiff then asked Mr. Bonsky to reconsider this decision because he was a medical marijuana patient, but to no avail. Exhibit 2 ¶¶ 35-36; Exhibit 3 ¶ 33.

29.     Consequently, Plaintiff was without employment from November 5, 2020 until the last week of June 2021. Exhibit 3 ¶ 34.

30.     On July 20, 2019, and pursuant to 35 P.S. § 1023.1201(j)(5)(ii) and 1023.1202, anxiety disorders were recognized as "serious medical conditions" qualifying individuals for the use of medical marijuana upon proper certification. Exhibit 2 ¶ 28.

**Defendant was Deliberately Indifferent to Plaintiff's Rights**

31.     Defendant has not updated its drug policies since Pennsylvania legalized marijuana for medical purposes. Exhibit 2 ¶ 38.

32.     Defendant does not have any policies or procedures to ensure equal employment opportunities for medical marijuana patients. Exhibit 2 ¶¶ 40-41.

33.     Defendant does not train its employees on preventing or remediating medical marijuana patient discrimination. Exhibit 2 ¶ 42.

34.     Plaintiff's supervisor was not supervised or trained on the prevention or remediation of medical marijuana patient discrimination. Exhibit 2 ¶ 43.

35.     When making termination decisions based on "positive" marijuana test results, Defendant does not distinguish between an individual's lawful off-duty use of medical marijuana and an individual's unlawful usage of illegal marijuana. Exhibit 2 ¶ 44.

                        **LAW OFFICE OF STEVEN T. AUERBACH**

By:   */s/ Steven T. Auerbach*
        Steven T. Auerbach, Esq.
        822 Montgomery Ave.
        Suite 210
        Narberth, PA 19072
        (215) 964-4410
        Auerbach.Steven@gmail.com

*Attorney for Plaintiff*

Dated: August 19, 2021