IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS,<br>Plaintiff; | ) | CIVIL ACTION |
| | ) | |
| | ) | No.: 5:21-cv-01208 |
| vs. | ) | |
| | ) | |
| WILLERT MFG. CO., LLC,<br>Defendant. | ) | |

## APPENDIX AND EXHIBITS

| | |
|---|---|
| Exhibit 1 | Complaint |
| Exhibit 2 | Requests for Admission |
| Exhibit 3 | Affidavit of Matthew Reynolds |
| Exhibit 4 | Department of Health Correspondence |
| Exhibit 5 | Patient Identification Card |
| Exhibit 6 | Offer Letter |
| Exhibit 7 | *Reserved* |
| Exhibit 8 | Termination Letter |
| Exhibit 9 | Drug Screen Results Letter |
| Exhibit 10 | Toxicology Expert Report |
| Exhibit 11 | Engineering Expert Report |

Exhibit 1

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ **County**
Berks

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N  A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Matthew Reynolds | Willert Manufacturing Company, LLC |

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested: ☐ within arbitration limits
(check one) ☒ outside arbitration limits

**Is this a *Class Action Suit?*** ☐ Yes  ☒ No    **Is this an *MDJ Appeal?*** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney:  Steven Auerbach, Esquire
☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**S E C T I O N  B**

**Nature of the Case**: Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE***. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☒ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

MATTHEW REYNOLDS,                              CIVIL ACTION-LAW

                          Plaintiff;           Docket No.:

vs.

**WILLERT MANUFACTURING COMPANY, LLC**
    447 Old Swede Rd,
    Douglassville, PA 19518
    (Berks County),


                                   COMPLAINT IN CIVIL ACTION

                Defendant.        Filed on behalf of Plaintiff:
                                   MATTHEW REYNOLDS

                                   Attorney of Record for this Party:
                                   Steven Auerbach, Esquire
                                   Law Office of Steven T. Auerbach
                                   822 Montgomery Ave.
                                   Suite 210
                                   Narberth, PA 19072
                                   Ph:  (215) 964-4410
                                   Fax: (610) 667-7305
                                   Auerbach.Steven@gmail.com
                                   Pa. I.D. #317309

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS, | : | COURT OF COMMON PLEAS |
| Plaintiff; | : | BERKS COUNTY |
| | : | CIVIL DIVISION |
| vs. | : | |
| | : | No. |
| WILLERT MFG. CO., LLC, | : | |
| Defendant. | : | |

## NOTICE TO DEFEND AND CLAIM RIGHTS

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must within twenty (20) days enter a written appearance and file your defenses or objections to the claims set forth against you. You are warned that failure to do so will result in the case proceeding without you and a judgment may be entered against you for any money claimed in this complaint. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE OF THE PENNSYLVANIA BAR ASSOCIATION. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION REGARDING AGENCIES THAT OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE.

Berks County Bar Association
544 Court Street.
P.O. Box 1058
Reading, PA 19603
(610) 375-4591

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS, | : | COURT OF COMMON PLEAS |
| Plaintiff; | : | BERKS COUNTY |
| | : | CIVIL DIVISION |
| vs. | : | |
| | : | No. |
| WILLERT MFG. CO., LLC, | : | |
| Defendant. | : | |

## AVISO

     Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

     Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados
De Filadelfia
Servicio De Referencia E
Informacion Legal
One Reading Center
Filadelfía, Pennsylvania 19107
(215) 238-6333 TTY (215) 451-6197

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

| MATTHEW REYNOLDS,<br>Plaintiff; | : | COURT OF COMMON PLEAS<br>BERKS COUNTY<br>CIVIL DIVISION |
|---|---|---|
| vs. | : | No. |
| WILLERT MFG. CO., LLC,<br><u>Defendant.</u> | : | |

## I. COMPLAINT IN CIVIL ACTION

Plaintiff Matthew Reynolds ("Mr. Reynolds" or "Plaintiff"), by and through his undersigned counsel, the Law Office of Steven T. Auerbach, hereby files this Complaint against Defendant Willert Manufacturing Company, LLC ("Willert" or the "Defendant")(together, the "Parties"), and in support thereof avers as follows:

## II. INTRODUCTION

1.      This action is brought to remedy violations of civil rights as secured by the Pennsylvania Medical Marijana Act, 35 P.S. § 10231 *et seq* ("MMA")[1].

2.      More specifically, Plaintiff seeks redress for wrongful termination related to his status as an individual certified to use medical marijuana.

3.      Consequently, Plaintiff seeks injunctive and declaratory relief; economic, compensatory, and punitive damages; attorneys' fees, and all other appropriate relief pursuant to governing law.

## III. JURISDICTION AND VENUE

4.      Jurisdiction over the Parties in the Courts of the Commonwealth of Pennsylvania is proper pursuant to the provisions of 42 Pa.C.S. §5301 *et seq*. Specifically, jurisdiction as to the Defendant is proper pursuant to 42 Pa.C.S. §5301 (a)(2)(iii) by reason of "the carrying on of a

---

[1] A private right of action recognized by *Palmitter v. Commonwealth Health Sys.*, 2019 WL 6248350, at *13 (Pa. Com. Pl. Lackawanna Cnty. Nov. 22, 2019); *see also*, *Hudnell v. Thomas Jefferson Univ. Hosp., Inc.*, PICS No. 20-01621 (E.D. Pa. September 25, 2020)(collecting cases).

continuous and systematic part of its general business within this Commonwealth." On information and belief, the Defendant operates a business in this Commonwealth and caused harm and compensable injury to the Plaintiff by acts or omissions committed in the Commonwealth of Pennsylvania in that is the subject of the present Complaint.

5.      Venue is proper in the Berks County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 2179 and 1006 inasmuch as the Defendant regularly conducts and solicits business in Berks County and inasmuch as the causes of action arose and/or a majority of the harm, occurrences, and transactions regarding the Plaintiff's causes of action arose and/or took place at least in part in Berks County.

### IV. PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult resident of Ephrata, Pennsylvania.

8.      At all times relevant to this action, Plaintiff was an "employee" of the Defendant within the meaning of the MMA. And, at no point did Plaintiff's employment duties to the Defendant involve the operation or physical control of chemicals, high-voltage electricity, or any other public utility.

9.      At all times relevant to this action, Plaintiff was a "patient" within the meaning of the MMA insofar as he 1) suffered and continues to suffer from severe anxiety disorder; 2) has met the requirements for medical marijuana certification; and 3) is a resident of Pennsylvania.

10.     At all times relevant to this action, Willert was the "employer" of Plaintiff within the meaning of the MMA.

11.     Willert is a Pennsylvania for-profit corporation engaged in manufacturing services.

12.     Willert has and continues to employ over 50 employees per calendar year for at least the last five (5) years, and engages in a variety of revenue-generating business activities.

13.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## V. FACTUAL ALLEGATIONS

14.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.     On October 16, 2020, and extending through November 5, 2020 (the "Term of Employment"), Plaintiff worked for Willert as a maintenance manager.

16.     Throughout the Term of Employment, Plaintiff consistently demonstrated excellent performance and dedication to the Defendant. Plaintiff performed his job duties and responsibilities in a highly competent manner and has routinely received positive feedback.

17.     Prior to the Term of Employment, Plaintiff was diagnosed with severe anxiety disorder.

18.     In order to manage the symptoms of this condition, Plaintiff's physician prescribed a course of medical marijuana treatment.

19.     Plaintiff then applied and received approval from the Pennsylvania Department of Health for a medical marijuana identification card for the purposes of lawfully obtaining medical marijuana.

20.     After Plaintiff received his identification card, Plaintiff began purchasing medical marijuana from licensed Pennsylvania dispensaries and consuming it exclusively as medically directed and on non-working hours.

21.     On October 28, 2020, Willert subjected Plaintiff to a pre-employment drug screen at Pottstown Hospital. Plaintiff reported for this drug screen, disclosed that he was a medical marijuana patient, and presented his unexpired medical marijuana card.

22.     On November 3, 2020, the results of the drug screen (which indicated that Plaintiff had marijuana in his system) were presented to Willert.

23.     Two (2) days later, and on November 5, 2020, Plaintiff's supervisor, Jack Bonsky terminated Plaintiff because he had failed the drug test.

24.     Plaintiff asked that Willert reconsider its decision because he is a medical marijuana patient, but to no avail.

25.     The Defendant terminated Plaintiff because he is a medical marijana patient.

26.     The Defendant's above-referenced actions are causally-connected to its discovery of Plaintiff's status as a medical marijuana patient by sequence, by an unusually-suggestive temporal proximity (within six days), and by direct supervisorial statements.

27.     Plaintiff believes, and therefore avers, that had he not been a member of protected class, he would not have been terminated.

28.     Since his termination, and despite his best efforts, Plaintiff has been without employment.

29.     Plaintiff's termination caused a loss of wage and otherwise detrimentally affected his mental health through feelings of depression and anxiety.

30.     This termination would detrimentally affect a reasonable person in like circumstances.

## COUNT I: REYNOLDS v. WILLERT MFG. CO., LLC
### MMA- Wrongful Termination

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.     By committing the foregoing acts of discrimination against Plaintiff, the Defendant has violated the MMA.

33.     The Defendant unreasonably failed to prevent, remedy, and/or correct the Defendant's above actions.

34.     The Defendant's wrongful acts were done with a reckless or callous disregard of, or indifference to, the rights and safety of the Plaintiff.

35.     As a direct and proximate result of the Defendant's violation of the MMA, Plaintiff has suffered the damages and losses set forth herein including a loss of wage and mental distress and has incurred attorney's fees and costs.

36.     The Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

37.     No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgement in favor of Plaintiff and against the Defendant in an amount in excess of $50,000.00, plus interest, punitive damages, costs and attorneys' fees.

Plaintiff further prays that this Court:

a.  Issue a declaratory judgment that the acts, policies, and practices complained herein are in violation of the MMA; and

b.  Enjoin the Defendant from continuing its acts, policies, and practices which violate the MMA; and

c.  Direct the Defendant to reinstate/promote Plaintiff to the position he would have occupied but for Defendant's unlawful conduct, making him whole for all earnings he

would have received but for the Defendant's unlawful conduct, including but not limited to wages, overtime, bonuses and other lost benefits; and

d. Direct the Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, with interest, in amounts to be determined at trial in excess of $50,000.00; and

e. Direct the Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses caused by the above unlawful conduct, including pain and suffering, emotional distress, indignity, loss of enjoyment of life, loss of self-esteem, and humiliation, in amounts to be determined at trial in excess of $50,000.00; and

f. Grant an award of costs of suit, expert fees and other disbursements, along with reasonable attorneys' fees;

g. Grant an award of punitive damages against the Defendants for their violations of the MMA;

h. Grant such other relief as the Court deems necessary and proper.

LAW OFFICE OF STEVEN T. AUERBACH

By:   /s/ Steven T. Auerbach
      Steven T. Auerbach, Esq.
      822 Montgomery Ave.
      Suite 210
      Narberth, PA 19072
      (215) 964-4410
      Auerbach.Steven@gmail.com

*Attorney for Plaintiff*

Dated: February 2, 2021

IN THE COURT OF COMMON PLEAS OF
BERKS COUNTY, PENNSYLVANIA

MATTHEW REYNOLDS,
Plaintiff,

vs

WILLERT MFG. CO., LLC,
Defendant.

COURT OF COMMON PLEAS
BERKS COUNTY
CIVIL DIVISION

No.

## VERIFICATION

The undersigned hereby states that the statements of fact made in the foregoing document are true and correct to the best of my information and belief. The language of the document was prepared on the advice of my attorney and any legal claims or legal defenses asserted in the document are pleaded on the advice of my attorney. If the document contains averments which are inconsistent in fact, then I have been unable after reasonable investigation to ascertain which of the inconsistent averments are true, but to the best of my information and belief, one of them is true. I understand that false statements made herein are subject to the penalties of 28 U.S.C. §1746 relating to unsworn falsification to authorities.

Dated: 02/01/2021

MATTHEW REYNOLDS

Exhibit 2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 5:21-cv-01208-JFL |
| | : | |
| v. | : | |
| | : | |
| WILLERT MFG. CO., LLC | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT WILLERT MANUFACTURING COMPANY, LLC'S RESPONSE TO PLAINTIFF'S REQUESTS FOR ADMISSION

Defendant Willert Manufacturing Company, LLC ("Willert"), by and through its counsel, Kaufman Dolowich & Voluck, LLP, responds to Plaintiff's Requests for Admission, subject to the following General Objections:

## GENERAL OBJECTIONS

The General Objections listed below are considered applicable to and are incorporated into each and every response by Defendant to Plaintiff's Requests for Admission, and each response is made without waiving any of the General Objections. The assertion of any one of these General Objections in response to an individual Request shall not be considered a waiver of the remaining General Objections.

A.     Willert objects to these Requests to the extent they seek information not in its possession, custody, or control.

B.     Willert objects to these Requests to the extent they seek documents and information protected by the work product doctrine and/or the attorney-client privilege.

C. Willert objects to these Requests to the extent they seek information prepared in anticipation of litigation or after the commencement of this litigation.

D. Willert objects to these Requests to the extent they seek legal opinions or conclusions.

E. Willert objects to these Requests to the extent they seek documents or information beyond the scope of information which Willert is required to provide pursuant to the Federal Rules of Civil Procedure.

F. Willert objects to these Requests to the extent they are overly broad, unduly burdensome, or impose an unreasonable expense.

G. Willert objects to these Requests to the extent they are vague and ambiguous.

H. Willert objects to these Requests to the extent they seek documents or information which are not relevant to the lawsuit and which are not reasonably calculated to lead to the discovery of admissible evidence.

I. Willert objects to these Requests to the extent they seek documents or information to which Plaintiff has equal access.

J. Willert objects to these Requests to the extent they require the production of publicly available materials, as the burden of locating, identifying and producing such documents is substantially the same or less for Plaintiff as it is for Willert.

Nothing stated herein shall be construed as an admission by Willert respecting the admissibility or relevance of any fact or document or as an admission of the truth or accuracy of any characterization of any document of any kind contained in Plaintiff's Requests.

These responses are based upon information available at the present time. Willert reserves the right to supplement, amend, or correct these responses in the event that future discovery reveals facts that will justify such supplementation, amendment, or correction.

By making information or documents available in response to Plaintiff's Requests, Willert does not waive or intend to waive any objections which it may have to Plaintiff's use of these documents and/or information and expressly reserves all questions concerning competency, privilege, relevancy, materiality and admissibility of all responses and documents produced and their contents; the right to object to Plaintiff's use of these responses or to the subject matter covered thereby at a later stage of proceedings on any grounds set forth herein above; and, the right to object on any and all proper legal grounds at any time to discovery procedures involved in or relating to the subject matter of the responses to the Requests.

## RESPONSE TO REQUESTS FOR ADMISSION

1.     On October 16, 2020, and extending through November 5, 2020 (the "Term of Employment") Plaintiff worked for Willert as a Maintenance Manager.

**REPONSE:**     **Admitted.**

2.     During the Term of Employment, Plaintiff did not receive a negative written performance review or evaluation from Willert.

**RESPONSE:**     **Willert objects to this Request because it is vague and ambiguous in that it fails to define "performance review" or "evaluation." Subject to and without waiver of the foregoing objections, it is specifically denied that there were no negative reviews of Plaintiff while he worked for Willert.**

3.     During the Term of Employment, Plaintiff did not receive a negative oral performance review or evaluation from Willert.

**RESPONSE:**     **Willert objects to this Request because it is vague and ambiguous in that it fails to define "performance review" or "evaluation." Subject to and without waiver of the foregoing objections, it is specifically denied that there were no negative reviews of Plaintiff while he worked for Willert.**

4.     During the Term of Employment, Plaintiff did not receive a written reprimand related to his job performance from Willert.

**RESPONSE:**     **Willert objects to this Request because it is vague and ambiguous in that it fails to define "written reprimand." Subject to and without waiver of**

**the foregoing objections, it is specifically denied that there were no reprimands of Plaintiff related to his job performance from Willert.**

5.      During the Term of Employment, Plaintiff did not receive an oral reprimand related to his job performance from Willert.

**RESPONSE:      Willert objects to this Request because it is vague and ambiguous in that it fails to define "oral reprimand." Subject to and without waiver of the foregoing objections, it is specifically denied that there were no reprimands of Plaintiff related to his job performance from Willert.**

6.      During the Term of Employment, Willert did not put Plaintiff on a performance improvement plan.

**RESPONSE:      Admitted.  Plaintiff was not placed on a performance improvement plan during the approximately two-week period of time he worked for Willert.**

7.      During the Term of Employment, Plaintiff did not receive any coaching from Willert to remediate any alleged performance deficiencies.

**RESPONSE:      Admitted.**

8.      Plaintiff was terminated on November 5, 2020 due to an October 28, 2020 positive test result. (see Willert0008).

**RESPONSE:      Admitted in part and denied in part.  It is admitted only that Plaintiff was terminated on November 5, 2020 after he received a "positive" result on his October 28, 2020 pre-employment drug test.  To the extent that this Request implies that the only positive test result was the only reason for Plaintiff's termination, it is specifically denied that the positive test result was the only reason for Plaintiff's termination.**

9.      Plaintiff's termination letter, Willert0008, does not reference any alleged performance deficiencies.

**RESPONSE:      Denied. This Request refers to a document, the terms of which speak for themselves.  All mischaracterizations or misstatements of the document referenced herein are specifically denied.**

10.   Willert's belief that Plaintiff had marijuana in his system on October 28, 2020 is based exclusively on document Willert0046 "Drug Screen Results Letter".

**RESPONSE:      It is specifically denied that "Willert's belief that Plaintiff had marijuana in his system on October 28, 2020 is based exclusively on document Willert 0046 'Drug Screen Results Letter.'"**

11.   Plaintiff tested positive for "D-THC-Marijuana **Metabolite**" on October 28, 2020 (see Willert0046).

**RESPONSE:**    **Denied as stated. This Request refers to a document, the terms of which speak for itself.   All mischaracterizations of the document are specifically denied. By way of further response, <u>see</u> Willert0046.**

12.   Willert or its assignee did not subject Plaintiff to a drug test for **active** tetrahydrocannabis.

**RESPONSE:**    **Denied. This Request refers to a document, the terms of which speak for itself.   All mischaracterizations of the document are specifically denied. By way of further response, <u>see</u> Willert0046.**

13.   Willert does not know whether it subjected Plaintiff to a drug test for **active** tetrahydrocannabis.

**RESPONSE:**    **Denied.  It is specifically denied that Willert does not know whether it subjected Plaintiff to a drug test for active tetrahydrocannabis.   The drugs Plaintiff was tested for included, *inter alia*, "D-THC – Marijuana Metabolite 50/15."**

14.   Willert does not know whether Plaintiff had a blood content of more than 10 nanograms of **active** tetrahydrocannabis per milliliter of blood in serum on October 28, 2020.

**RESPONSE:**    **Willert objects to this Request to the extent that it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, it is specifically denied that Willert "does not know whether Plaintiff had a blood content of more 10 nanograms of active tetrahydrocannabis per milliter of blood in serum on October 28, 2020."   By way of further response, Willert is aware that Plaintiff's pre-employment drug screen   results provided, in pertinent part: "D-THC-Marijuana Metabolite 50/15 – Positive."**

15.   Willert does not engage in random drug or alcohol testing of its employees. (see Willert0054).

**RESPONSE:**    **Willert objects to this Request because it calls for a legal conclusion. Subject to and without waiver of the foregoing, this Request refers to a document, the terms of which speak for itself. All mischaracterizations or misstatements of the document are specifically denied. By way of further response, <u>see</u> Willert0048 – Willert-0061.**

16.    Willert does not allege that Plaintiff manufactured a controlled substance on Willert's premises. (see Willert0049).

**RESPONSE:**    **Willert objects to this request because it seeks irrelevant information**

and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff manufactured a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff manufactured a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.

17.    Willert does not allege that Plaintiff dispensed a controlled substance on Willert's premises. (see Willert0049).

**RESPONSE:**    **Willert objects to this request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff dispensed a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff manufactured a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

18.    Willert does not allege that Plaintiff possessed a controlled substance on Willert's premises. (see Willert0049).

**RESPONSE:**    **Willert objects to this request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff manufactured a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff possessed a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

19.    Willert does not allege that Plaintiff used a controlled substance **on** Willert's premises. (see Willert0049).

6

**RESPONSE:**     **Willert objects to this request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff used a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff used a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

20.     Willert does not allege that Plaintiff purchased a controlled substance on Willert's premises. (see Willert0049).

**RESPONSE:**     **Willert objects to this request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff purchased a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff purchased a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

21.     Willert does not allege that Plaintiff sold a controlled substance on Willert's premises. (see Willert0049).

**RESPONSE:**     **Willert objects to this request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff sold a controlled substance on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff sold a controlled substance on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

22.     Willert does not allege that Plaintiff used marijuana on Willert's premises or during working hours. (see Willert0049).

RESPONSE:     **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, admitted in part and denied in part. It is admitted only that to date, Willert has not alleged that Plaintiff used marijuana on Willert's premise. It is specifically denied that Willert will not at any point in this litigation allege that Plaintiff used marijuana on Willert's premises. Plaintiff has refused to appear for deposition in this matter before the deadline for Willert's response to these Requests. As a result, investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

23.    Willert does not allege that Plaintiff was under the influence of marijuana on Willert's premises or during working hours. (see Willert0049).

RESPONSE:     **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections, it is specifically denied that "Willert does not allege that Plaintiff was under the influence of marijuana on Willert's premises or during working hours."**

24.    Willert did not discipline, reprimand, coach, or punish Plaintiff in any way for actual or suspected "on-the-job" marijuana use or influence.

RESPONSE:     **Willert objects to this Request because it is vague and ambiguous. Subject to and without waiver of the foregoing objections, it is specifically denied that "Willert did not discipline, reprimand, coach or punish Plaintiff in any way for actual or suspected 'on-the-job' marijuana use or influence."**

25.    Willert does not contest Plaintiff's assertion that during the Term of Employment, he was a valid Pennsylvania medical marijuana patient. (see Plaintiff's medical marijuana patient identification card).

RESPONSE:     **It is specifically denied that Willert does not contest that Plaintiff's assertion that "during the Term of Employment, he was a valid Pennsylvania medical marijuana patient." Plaintiff has refused to appear for deposition before the deadline for response to these Requests, Plaintiff has not produced his medical records, and investigation and discovery in this matter are ongoing. As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.**

**Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

26.     Willert does not contest Plaintiff's assertion that during the Term of Employment, Plaintiff was a Pennsylvania resident. (see address on Willert0008).

**RESPONSE:**          **After reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request. Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

27.     Willert does not contest Plaintiff's assertion that Prior to the Term of Employment, he was diagnosed with severe anxiety disorder.

**RESPONSE:**          **It is specifically denied that "Willert does not contest Plaintiff's assertion that Prior to the Term of Employment, he was diagnosed with severe anxiety disorder." Plaintiff has refused to appear for deposition in this matter before the deadline for response to these Requests, Plaintiff has not produced a copy of his medical records, and investigation and discovery in this matter are ongoing. As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.**

28.     On July 20, 2019, and pursuant to 35 P.S. § 1023.1201(j)(5)(ii) and 1023.1202, anxiety disorders were recognized as "serious medical conditions" qualifying individuals for the use of medical marijuana upon proper certification.

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. After reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.**

29.     Willert does not contest Plaintiff's assertion that prior to the Term of Employment, he had met the requirements for certification under the Pennsylvania Medical Marijuana Act. (see patient identification card).

**RESPONSE:**          **It is specifically denied that "Willert does not contest Plaintiff's assertion that prior to the Term of Employment, he had met the requirements for certification under the Pennsylvania Medical Marijuana Act." Plaintiff has refused to appear for deposition in this matter before the deadline for response to these Requests and investigation and discovery in this matter are ongoing. As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request. Willert reserves the right to supplement or amend this response.**

30.     Willert does not alledge that, during the Term of Employment, Plaintiff consumed medical marijuana by "smoking" or in any way prohibited under the Pennsylvania Medical Marijuana Act.

**RESPONSE:**          **Admitted in part and denied in part.  It is admitted only that to date, Willert has not alleged that "during the Term of Employment, Plaintiff consumed medical marijuana by 'smoking' or in any way prohibited under the Pennsylvania Medical Marijuana Act."  It is specifically denied that Willert will not allege "during the the Term of Employment, Plaintiff consumed medical marijuana by 'smoking' or in any way prohibited under the Pennsylvania Medical Marijuana Act."  Plaintiff has refused to appear for deposition in this matter before the deadline for response to these Requests and investigation and discovery in this matter are ongoing.  As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.  Willert reserves the right to supplement or amend this response.**

31.     Willert does not alledge that, during the Term of Employment, Plaintiff's failed to store his medical marijuana in the original container in which it was dispensed.

**RESPONSE:**          **Admitted in part and denied in part.  It is admitted only that to date, Willert has not alleged that "during the Term of Employment, Plaintiff's [sic] failed to store his medical marijuana in the original container in which it was dispensed."  It is specifically denied that Willert will not allege that "during the Term of Employment, Plaintiff's [sic] failed to store his medical marijuana in the original container in which it was dispensed."  Plaintiff has refused to appear for deposition in this matter before the deadline for response to these Requests and investigation and discovery in this matter are ongoing.  As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.  Willert reserves the right to supplement or amend this response.**

32.     Willert does not contest Plaintiff's assertion that he disclosed his status as a medical marijuana patient during his October 28, 2020 drug screen.

**RESPONSE:**          **It is specifically denied that "Willert does not contest that Plaintiff's assertion that he disclosed his status as a medical marijuana patient during his October 28, 2020 drug screen."  Plaintiff has refused to appear for deposition in this matter before the deadline for response to these Requests and investigation and discovery in this matter are ongoing.  As a result, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.  Willert reserves the right to supplement or amend this response.**

33.     Jack Bonsky was Plaintiff's supervisor during the Term of Employment.

**RESPONSE:**          Admitted.

34.     During the Term of Employment, Jack Bonsky was Willert's Plant Manager and was highest-ranking non-owner employee at the location in which Plaintiff worked.

**RESPONSE:**          **It is specifically denied that "[d]uring the Term of Employment, Jack Bonsky was Willert's Plant Manager and was [the] highest-ranking non-owner employee at the location in which Plaintiff worked."**

35.     On November 5, 2020, Plaintiff informed Jack Bonsky that he was a medical marijuana patient.

**RESPONSE:**          Admitted.

36.     Willert did not rescind it's November 5, 2020 termination after it was informed that Plaintiff was a medical marijuana patient.

**RESPONSE:**          Admitted.

37.     The Pennsylvania Medical Marijuana Act was signed into law on April 17, 2016. (see https://www.legis.state.pa.us/cfdocs/legis/li/uconsCheck.cfm?yr=2016&sessInd=0&act=16)

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Subject to and without waiver of the foregoing, this Request refers to a document, the terms of which speak for itself. All mischaracterizations or misstatements of the document are specifically denied.**

38.     Willert did not update its substance abuse policies after April 17, 2016- the date Pennsylvania legalized marijuana for medical purposes. (see Willert0047-0063).

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Subject to and without waiver of the foregoing objections, admitted in part and denied in part.   Willert did not open its Douglassville, Pennsylvania facility until July 22, 2019.   It is admitted only that Willert did not update its substance abuse policies after July 22, 2019. Willert objects to the remainder of the Request because it calls for a legal conclusion.**

39.     Willert's substance abuse policies do not contain the phrase 'medical marijuana'. (see Willert0047-0063).

**RESPONSE:**          **This Request refers to a document, the terms of which speak for itself. All mischaracterizations or misstatements of the document are specifically denied.   By way of further response, <u>see</u> Willert0048 - Willert0061.**

40.     Willert does not have any policies or procedures to ensure that medical marijuana patients are not unlawfully denied equal employment opportunities.

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Willert further objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence as it is not limited in scope in terms of time. Subject to and without waiver of the foregoing objections, it is specifically denied that Willert does not have any policies or procedures "to ensure that medical marijuana patients are not unlawfully denied equal employment opportunities."**

41.     Willert does not have any policies or procedures to ensure equal employment opportunities for medical marijuana patients.

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Willert further objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence as it is not limited in scope in terms of time. Subject to and without waiver of the foregoing objections, it is specifically denied that Willert does not have any policies or procedures "to ensure equal employment opportunities for medical marijuana patients."**

42.     Willert does not train its employees on preventing or remediating medical marijuana patient discrimination.

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Willert further objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discover of admissible evidence.  Subject to and without waiver of the foregoing objections, it is specifically denied that "Willert does not train its employees on preventing or remediating medical marijuana patient discrimination."**

43.     Jack Bonsky was not supervised or trained on the prevention or remediation of medical marijuana patient discrimination.

**RESPONSE:**          **Willert objects to this Request because it calls for a legal conclusion. Willert further objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discover of admissible evidence.  Subject to and without waiver of the foregoing objections, it is specifically denied that "Jack Bonsky was not supervised or trained on the prevention or remediation of medical patient discrimination."**

44.    When making termination decisions based on "positive" marijuana test results, Willert does not distinguish between an individual's off-duty use of medical marijuana and an individual's off-duty use of illegal recreational marijuana.

**RESPONSE:**        **Willert objects to this Request because it is vague and ambiguous. Subject to and without waiver of the foregoing objections, it is specifically denied that "[w]hen making termination decisions based on 'positive' marijuana test results, Willert does not distinguish between an individual's off-duty use of medical marijuana and an individual's off-duty use of illegal recreation marijuana."**

45.    Willert does not provide training or education to its employees related to drug and alcohol abuse in the workplace.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objection, it is specifically denied that "Willert does not provide training or education to its employees related to drug and alcohol abuse in the workplace."**

46.    Plaintiff's salary and benefit structure is accurately set forth in Willert0001-0002, Willert0005-0007.

**RESPONSE:**        **This Request refers to a document, the terms of which speak for itself. All mischaracterizations or misstatements of the document are specifically denied. By way of further response, see Willert001-0002 and Willert0005-0007.**

47.    Plaintiff's job responsibilities as a Maintenance Manager was to oversee the repairs, installations, and upkeep of various machines and equipment, and to supervise technicians on all shifts.

**RESPONSE:**        **Admitted in part and denied in part. It is admitted only that part of the Maintenance Manager's job responsibilities included overseeing the repairs, installations, and upkeep of various machines and equipment, and supervising technicians on all shirts. It is specifically denied that the responsibilities set forth in this Request constitute a complete list of the Maintenance Manager's job responsibilities at any relevant time.**

48.    Willert believes that Plaintiff, as a manager, was appropriately designated as an overtime-exempt employee (see Willert0001, 000109).

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.**

49.    Willert's Maintenance Managers are not required by Willert to be licenced to operate or control chemicals.

**RESPONSE:**          **Willert objects to this Request because it is vague and ambiguous in that it fails to define "operate or control chemicals."  In light thereof, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request. Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

50.    Willert's Maintenance Managers are not required by Willert to be licenced to operate or control high-voltage electricity.

**RESPONSE:**          **Willert objects to this Request because it is vague and ambiguous in that it fails to define "high-voltage electricity."  In light thereof, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request. Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

51.    Willert's Maintenance Managers are not required by Willert to possess an electrical journeyman's certificate.

**RESPONSE:**          **Willert objects to this Request because it is vague and ambiguous in that it fails to define "electrical journeyman's certificate."  In light thereof, after reasonable inquiry, the information Willert knows or can readily obtain is insufficient to enable it to admit or deny this Request.  Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

52.    Willert complies with all OSHA regulations relating to manufacturing, environmental, health, and employee safety guidelines.

**RESPONSE:**          **Willert objects to this Request because it is overly broad, seeks irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.   Willert further objects to this Request because it calls for a legal conclusion.**

53.    Willert provides basic OSHA safety training courses for Maintenance Managers.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

54.    Willert provides basic OSHA Hazardous communication training to its Maintenance Managers.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

55.    Willert does not provide an Arc Flash/Electrical Safety Training Course to its Maintenance Managers.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

56.    Willert provides the OSHA awareness course entitled, "Basic Workplace Safety Orientation" to its employees.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

57.    Willert does not provide its Maintenance Managers with Arc Flash protection uniforms.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

58.    Willert does not provide its Maintenance Managers with electrically-rated Arc Flash Suits for performing maintenance on equipment rated above 601 volts.

RESPONSE:         **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

59.    Willert does not provide its Maintenance Managers with rated screwdrivers for performing maintenance on equipment rated above 601 volts.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

60.    Willert does not provide its Maintenance Managers with high-voltage circuit breaker disconnecting poles for use in interrupting or switching off power rated above 601 volts.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

61.    Willert does provide its Maintenance Managers with rated gloves for performing maintenance on equipment rated above 601 volts.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

62.    Willert's Douglassville facility does not use equipment at or in excess of 115,000 volts.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiver of the foregoing objections, admitted.**

63.    Willert's Douglassville facility's electrical equipment that exceeds 601 volts is maintained by non-Willert employees.

**RESPONSE:**        **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this request because it is vague and ambiguous in that it fails to define "maintained."  Subject to and without waiver of the foregoing objections, it is admitted that non-Willert employees perform work on electrical equipment that exceeds 601 volts, as necessary.  To the extent that this Request implies that this means that Plaintiff, as the Maintenance Manager, did not "operate" or was not "in physical control" of "High-voltage electricity" under the Pennsylvania Medical Marijuana Act (the "MMA"), it is specifically denied.**

64.    Plaintiff's duties did not include the mixing or processing of chemicals.

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Willert further objects to this Request to the extent that it calls for a legal conclusion. Subject to and without waiver of the foregoing objections, specifically denied. Plaintiff's job responsibilities as a Maintenance Manager encompassed overseeing the maintenance and report of equipment with which mixing and processing of chemicals was performed.**

65.    Plaintiff's duties to Willert did not include the operation or control of a public utility.

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Willert further objects to this Request to the extent that it calls for a legal conclusion. Subject to and without waiver of the foregoing objections, admitted. Investigation and discovery are ongoing and Willert reserves the right to supplement or amend this response.**

66.    Willert did not require Plaintiff to perform work duties in confined spaces that had limited or restricted means for entry or exit or were not designed for continuous occupancy such as tanks, vessels, silos, storage bins, hoppers, vaults, pits, manholes, tunnels, equipment housings, ductwork, and pipelines.

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Willert further objects to this Request to the extent that it calls for a legal conclusion.**

67.    Willert did not require Plaintiff to perform work duties at heights where the hazard of a fall existed and there were no handrails or fall protections in place.

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Willert further objects to this Request to the extent that it calls for a legal conclusion.**

68.    From October 16, 2021 to the present, no Willert Maintenance Manager has had a Workers' Compensation Claim against Willert.

**RESPONSE:**          **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence. Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

69.     From October 16, 2021 to the present, Willert or its Workers' Compensation Insurance Carrier has not paid Workers' Compensation wage loss benefits to an injured Maintenance Manager or to his/her estate.

**RESPONSE:          Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

70.     From October 16, 2021 to the present, Willert or its Workers' Compensation Insurance Carrier has not paid Workers' Compensation medical benefits to an injured Maintenance Manager or to its medical provider.

**RESPONSE:          Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

71.     From October 16, 2021 to the present, Willert or its Workers' Compensation Insurance Carrier has not paid Workers' Compensation specific loss benefits to an injured Maintenance Manager or to his/her estate.

**RESPONSE:          Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

72.     From October 16, 2021 to the present, Willert or its Workers' Compensation Insurance Carrier has not paid Workers' Compensation death benefits to an injured Maintenance Manager or to his/her estate.

**RESPONSE:          Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

73.     Willert is not aware of any Workers' Compensation Claim Petition by a Willert Maintenance Manager alleging a work injury on a date between October 16, 2021 to the present.

**RESPONSE:**  **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

74.     No production man-hours were lost by Willert Maintenance Managers from October 16, 2021 to the present because of work injuries.

**RESPONSE:**  **Willert objects to this Request because it seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence.  Willert further objects to this Request to the extent that it seeks confidential and proprietary information regarding non-parties to this action.**

                    **KAUFMAN DOLOWICH & VOLUCK, LLP**

                    */s/Eileen Monaghan Ficaro*
                    Gregory S. Hyman, Esquire
                    Eileen Monaghan Ficaro, Esquire
                    Four Penn Center
                    1600 John F. Kennedy Blvd.
                    Suite 1030
                    Philadelphia, PA 19103
                    (215) 501-7024 (phone)
                    (215) 405-2973 (fax)
                    ghyman@kdvlaw.com
                    eficaro@kdvlaw.com
                    *Attorneys for Defendant,*
Dated:  August 25, 2021          *Willert Manufacturing Company, LLC*

**VERIFICATION**

I, Bryan Willert, hereby state that I am authorized to make this Verification on behalf of Defendant Willert Manufacturing Co., LLC ("Willert").   I have reviewed the averments made by Willert in Defendant Willert Manufacturing Company, LLC's Response to Plaintiff's Requests for Admission, and I affirm that they are true and correct to the best of my knowledge, information and belief.  I make this Verification subject to the penalties relating to unsworn falsification to authorities.


_____Aug 25, 2021_____                          _____
Date                                                                              Bryan Willert

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATTHEW REYNOLDS | : |
| Plaintiff, | : Civil Action No. 5:21-cv-01208-JFL |
| v. | : |
| WILLERT MFG. CO., LLC | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Eileen Monaghan Ficaro, Esquire, hereby certify that a true and correct copy of the foregoing

Response to Plaintiff's Requests for Admission was served via E-Mail and First Class mail, postage prepaid,

upon the following:

Steven Auerbach, Esquire
Law Office of Steven T. Auerbach
822 Montgomery Avenue
Suite 210
Narberth, PA 19072
*Counsel for Plaintiff*

Christopher D. Mandracchia, Esquire
CDM Law
4 East 1st Avenue, Suite 103
Conshohocken, PA 19428
*Counsel for Plaintiff*

**KAUFMAN DOLOWICH & VOLUCK, LLP**

*/s/Eileen Monaghan Ficaro*
Gregory S. Hyman, Esquire
Eileen Monaghan Ficaro, Esquire
Four Penn Center
1600 John F. Kennedy Blvd.
Suite 1030
Philadelphia, PA 19103
(215) 501-7024 (phone)
(215) 405-2973 (fax)
ghyman@kdvlaw.com
eficaro@kdvlaw.com
*Attorneys for Defendant,*
Dated:  August 25, 2021                              *Willert Manufacturing Company, LLC*

Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MATTHEW REYNOLDS,                              )       No.: 5:21-cv-01208
        Plaintiff;                            )
                           )       **AFFIDAVIT OF**
        vs.                                  )       **MATTHEW REYNOLDS**
                           )
WILLERT MFG. CO., LLC,                         )
        Defendant.                            )

## AFFIDAVIT

I, Matthew Reynolds, do hereby declare that:

1. I am an individual competent to make this affidavit.

2. I have personal knowledge of the facts set forth below.

3. This Affidavit is provided in support of the above-captioned matter and is consistent with that which I intend to testify at trial.

4. On October 16, 2020, and extending through November 5, 2020 (the "Term of Employment") I worked for Willert as a Maintenance Manager.

5. During the Term of Employment, I never received a negative oral or written performance review or evaluation.

6. During the Term of Employment, I never received an oral written reprimand related to my job performance.

7. During the Term of Employment, I was not put on a performance improvement plan.

8. During the Term of Employment, I did not receive any coaching to remediate any alleged performance deficiencies.

9. During the Term of Employment, I was given no indication that Willert was in any way dissatisfied with my job performance or responsibilities.

10. During the employment on-boarding process, I was told that my job was "not to turn a wrench, but to manage the people who would be turning wrenches."

11. At no point did my employment duties to Willert involve the operation or physical control of chemicals, high-voltage electricity, or any other public utility.

12. The Willert facility in which I worked did not have equipment of 115,000 volts or higher.

13. Willert did not give me thermography equipment.

14. Willert did not give me an infrared thermometer.

15. Willert did not give me rated tools.

16. Willert did not give me a high-voltage circuit breaker disconnecting pole for use interrupting or switching off power rated above 601 volts.

17. Willert did not give me an Arc Flash suit. In fact, I never saw one on Willert's premises.

18. I never used rated gloves while working for Willert.

19. I do not hold a journeyman's certificate nor was I informed that this was a necessary prerequisite to employment with Willert.

20. I am not licensed to operate high-voltage electricity nor was I informed that this was a necessary prerequisite for employment with Willert.

21. During the Term of Employment, I was a Pennsylvania medical marijuana patient in so far as I suffered from severe anxiety disorder; have met the requirements for medical marijuana certification; and am a resident of Pennsylvania.

22. During the Term of Employment, I possessed a valid, unexpired medical marijuana patient identification card.

23. During the Term of Employment, I used my identification card to purchase medical marijuana exclusively from Pennsylvania medical marijuana dispensaries.

24. I consumed my medical marijuana exclusively on non-working hours and never within eight (8) hours of the start of a shift.

25. At no point during the Term of Employment did I "smoke" medical marijuana.

26. At all times during the Term of Employment, my medical marijuana was kept in the original package in which it was dispensed.

27. At all times during the Term of Employment, my patient identification card was on my person or possession when I consumed my medical marijuana.

28. At no point during the Term of Employment did I manufacture, dispense, possess, use, purchase, sell, or be under the influence of medical marijuana on Willert's premises.

29. At no point was I accused of being under the influence of any controlled substance while being on the job.

30. On October 28, 2020, Willert subjected me to a pre-employment drug screen.

31. I reported to this drug screen as directed, disclosed that I was a medical marijuana patient, and presented my marijuana patient identification card.

32. On November 5, 2020, I was informed by Jack Bonsky that I was being fired because of my positive drug result.

33. I asked that Mr. Bonsky reconsider this decision because I was a medical marijuana patient, but to no avail.

34. Consequently, I was without employment from November 5, 2020 until the last week of June 2021.

35. During this period, I was without my portion of my yearly $85,000 salary, anticipated $15,000 bonus, and other employment perks.

36. Immediately after my termination, I noticed an exacerbation of my underlying anxiety and depression.

I understand that false statements made herein are subject to the penalties of 28 U.S.C. §1746 relating to unsworn falsification to authorities.


Dated:_ _____          _Matthew Reynolds (original signature on file)_____
                             Matthew Reynolds

Exhibit 4

## 12.0 documents demonstrating approval from PA Department of Health



**pennsylvania**
DEPARTMENT OF HEALTH

Home | Profile Settings | Browse Physician | Patient Certifications | Manage Caregivers | Make Payment | Logout

Helpline Contact: 888-733-5505

### Patient Certifications



List of Patient Certifications:

| Certification | Create Date | Status |  |
|---|---|---|---|
|  |  |  | View Certification |
| 349867 | 2020-06-27T13:04:02 | Active |  ☐ |

Subject

### 3. Message from PA Medical Marijuana Program

Auto-Response By (06/27/2020 11:12 AM)

NOTE: Do not reply to this email as this is an unmonitored account. If you have questions, please send them to RA-DHMedMarijuana@pa.gov.

Dear Patient:

Your patient certification has been issued by your practitioner. Please click https://padohmmp.custhelp.com/app/login to log in to your patient portal as a returning user and click the 'Make Payment' tab to pay for your medical marijuana ID card. You will get an immediate notification letting you know if your payment goes through. Once a successful payment is made, your card goes to print and gets mailed to the address in your account. Most people receive theirs within 21 days.

You may qualify for a discount to purchase your ID card if you participate in one of the following government programs: Medicaid; PACE/PACENET; CHIP; SNAP; and WIC. If so, read the disclaimer on the Payment page and select the appropriate program. You will be prompted to pay the $25 at that time.

Your username is: clausly

Thank you,
Office of Medical Marijuana
www.medicalmarijuana.pa.gov

Exhibit 5

15.) The MM card presented at the pre-employment drug screen:



Exhibit 6



**WILLERT** *MFG Co., LLC*

447 Old Swede Rd, Douglassville, PA 19518

Phone: 610-385-9500
Fax: 610-385-9322

October 15, 2020

Mr. Matt Reynolds

Dear Mr. Reynolds,

I want to thank you for your time to interview with Willert Manufacturing Company. I am pleased to offer you the position of Maintenance Manager with the following package:

- **Full-time/Part-time**: Full-time Salary Exempt Employee
- **Pay Rate** - $3,269.24 per biweekly pay period. Upon completion of project goals defined by the Plant Manager, you will receive a bonus of $15,000. Future bonuses are determined and paid at the discretion of management.
- **Hours:** Minimum of 40 hours per week.
- **State Date:** October 19, 2020
- **Benefits:** See salaried employee benefit package attached. As a deviation from our standard Salaried Employee Benefit Package, you will receive four (4) weeks paid vacation per year.

This offer is contingent upon successful completion of a pre-employment drug test. All such testing will be conducted in accordance with applicable federal, state, and local laws. Please contact Ed Kennet to get the necessary paperwork you will need, should you accept this offer.

Upon the Immigration Reform and Control Act (IRCA), our company is required to verify the identity and work authorization of all newly hired employees. Therefore, you will be required to complete the I-9 form upon hire. Within three business days of beginning employment, you will need to supply acceptable documentation (as noted on the I-9 form) of your identity and work authorization. Willert Home Products, Inc. is an equal opportunity employer.

**Our company adheres to a policy of employment-at-will which allows either party to terminate the employment relationship at any time, for any reason, with or without cause.**

If you accept this position, please sign on the next page and return by Monday, October 19, 2020. You may email it to me at tgillette@willert.com or fax it to (314) 772-3238.

I look forward to working with you in this position. If you have any questions or would like additional clarification, please let us know.

Sincerely,

*Tammy Gillette*

Tammy Gillette
HR Manager

1 of 2

**Willert0001**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ACKNOWLEDGEMENT**

I, Matt Reynolds, accept the offer as presented above.

_____        _____
          Signature                                   Date

Willert0002

Exhibit 7

Exhibit 8

November 5, 2020

MR. MATTHEW REYNOLDS
1586 DIVISION HWY
EPHRATA, PA 17522

Dear Mr. Reynolds,

Willert Manufacturing requires all applicants to submit to a Pre-Employment drug test as outlined in the Substance Abuse Drug-Free Workplace Awareness Policy. We are committed to continuing its good faith efforts to maintain a drug and alcohol free work environment. The Company has developed a program for responsible drug testing of applicants who are seriously being considered by our Company for employment.

The policy states, *"Applicants who test "positive" will not be hired. If an applicant has tentatively been hired on a probationary or conditional basis, subject to passing an appropriate physical examination which could include a drug test, or subject to the results of a drug test only, and the applicant/employee then tests "positive" on the test, the applicant/employee will be terminated*

You took your drug test done on October 28, and the results were verified by the MRO on November 3, 2020 (See attached notice). Due to the positive result, your employment as the Maintenance Manager is hereby terminated on November 5, 2020. Our understanding and agreement with respect to your separation is as follows:

1. Your final payroll check is being given to you today.

2. Since you were not yet eligible for coverage under the Company's group medical, vision and life insurance programs, you are not eligible for COBRA coverage.

3. This "Agreement and Release" and the terms shall be kept confidential.

Thank you for your service to Willert Manufacturing Company.

Sincerely,


Jack Bonsky
Plant Manager, Willert Manufacturing

Exhibit 9

Occupational Health-Pottstown Hospital Tower Hlth
81 Robinson Street
Pottstown, PA 19464
Phone: 610-326-2300
Fax: 610-970-5889

# Drug Screen Results Letter

To:   Dave Furno/Ed Kennet
      Willert Manufacturing CO, LLC
      447 Old Swede Road
      Douglassville, PA 19518-1239

| | |
|---|---|
| Name: | Matthew D. Reynolds |
| Patient ID: | 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 |
| Collection Date & Time: | 10/28/2020 |
| Specimen ID #: | Z40177937 |
| Drug Test Profile: | 5 Rapid DS |
| Drugs Tested For: | Creatinine, Urinary   > = 20 |
| | D-Amphetamines 1000/500 |
| | D-Cocaine 300/150 |
| | D-Opiates 2000/2000 DOT |
| | D-PCP-Phencyclidine 25/25 |
| | **D-THC-Marijuana Metabolite 50/15** - Positive |
| Collection Site & Phone: | Occupational Health-Pottstown Hospital |
| | 81 Robinson Street |
| | Pottstown, PA 19464 |
| | 610-326-2300 |
| Collector: | Michelle Bradley, RT |
| Laboratory: | Medtox Laboratories |
| | 402 W County Rd D |
| | Saint Paul, MN 55112 |
| Test Reason: | Pre-employment |
| Result: | Positive |
| MRO Verified On: | 11/03/2020 |
| Date CCF Received: | 10/28/2020 |

Joseph Albert, DO                              11/3/20
Medical Review Officer              Date of Review and Verification

**Willert0046**

Exhibit 10

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS, | ) | No.: 5:21-cv-01208 |
| Plaintiff; | ) | |
| | ) | **AFFIDAVIT OF** |
| vs. | ) | **ALLISON MULLER** |
| | ) | |
| WILLERT MFG. CO., LLC, | ) | |
| Defendant. | ) | |

## AFFIDAVIT

I, Allison Muller, do hereby declare that:

1.  I am an individual competent to make this affidavit.

2.  I have personal knowledge of the facts set forth below.

3.  This Affidavit is provided in support of the above-captioned matter and is consistent with that which I intend to testify at trial.

4.  At trial, if called, I will testify consistent with my previously submitted expert report: chiefly, whether or not the level of active tetrahydrocannabis in Mr. Reynolds' blood exceeded 10 ng/mL on 10/28/20.

I understand that false statements made herein are subject to the penalties of 28 U.S.C.

§1746 relating to unsworn falsification to authorities.

Dated:_____       *Allison Muller (original signature on file)*
                          Allison Muller



**Acri Muller Consulting LLC**
4920 Pennell Road, #311
Aston, PA 19014
215 593-5805
allison@acrimullerconsulting.com

Steven Auerbach, Esq.
Law Office of Steven Auerbach
822 Montgomery Avenue
Suite 210
Narberth, PA 19072

July 12, 2021

Dear Mr. Auerbach:

This is a toxicology-based report following my review of the case involving Matthew D. Reynolds. I was asked to opine whether or not Mr. Reynolds had evidence of a "blood content of more than 10 nanograms [ng] of active tetrahydrocannabis per milliliter [mL] of blood" on 10/28/20.

I have over twenty years' experience in the field of clinical toxicology, have been board certified as a clinical toxicologist through the American Board of Applied Toxicology (ABAT) since 2005, and am a fellow of the American Academy of Clinical Toxicology (FAACT). I hold a Bachelor's of Science in Pharmacy, a Doctor of Pharmacy (PharmD) degree, and a license to practice pharmacy in Pennsylvania. As a clinical toxicologist, I have been consulted on the interpretation of drug testing results.

In developing my opinion, I have reviewed the drug screen results letter for Mr. Reynolds, dated 11/3/20, for testing performed at Pottstown Hospital Occupational Health, Pottstown, Pennsylvania.

<u>Summary of findings</u>

The question posed to me was whether or not the level of active tetrahydrocannabis in Mr. Reynolds' blood exceeded 10 ng/mL on 10/28/20. However, this cannot be determined based on the toxicology testing ordered by Willert Manufacturing. This is because only "THC-marijuana metabolite" (that is, a breakdown product of marijuana), not active drug (active

Dr. A. A. Muller

tetrahydrocannabis), was tested for on 10/28/20. Simply put, Mr. Reynolds' employer was looking for apples but instead tested for oranges. As a result of this incorrect testing, Mr. Reynolds was terminated on 11/5/20 without evidence of him having active tetrahydrocannabis of any amount in his blood.

 I reserve the right to amend this report should additional data be presented to me.

Sincerely,

Allison A. Muller, Pharm.D, D.ABAT, FAACT

Principal/Owner Acri Muller Consulting, LLC



**Allison A. Muller, PharmD, D.ABAT, FAACT**
*Mailing address*: **4920 Pennell Rd, #311**
**Aston, Pennsylvania 19014**
*Phone*: **215-593-5805**
**Allison@AcriMullerConsulting.com**

**PROFILE**
Healthcare leader with over twenty (20) years' experience in clinical toxicology, medical communications, professional education, and healthcare program development.

**CURRENT PROFESSIONAL EXPERIENCE**

**2014 – present**

**Acri Muller Consulting, LLC – Media, Pennsylvania**
*Independent consulting firm providing medical education, medical writing, and toxicology expertise to healthcare organizations, medical communications firms, pharmaceutical companies, attorneys, and nonprofit medical associations.*

**Principal and Owner**

♦   Board-certified clinical toxicologist providing expert witness testimony for cases involving alcohol or drug-related accidents, chemical exposures, environmental issues (such as mold, carbon monoxide), medication errors, opioid-related deaths and adverse effects, and postmortem toxicology
♦   Medical writer for accredited physician, pharmacist, nurse, and physician assistant education activities and pharmaceutical marketing materials
♦   Therapeutic areas of specialty: toxicology, oncology, pediatrics, and pain management

**2012 – 2014**

**The Institute for Continuing Healthcare Education – Vox Medica, Philadelphia, Pennsylvania**
*An independent accredited medical education company providing over 25 years of certified education for physicians, pharmacists, and nurses in the therapeutic areas of oncology, neuroscience, ophthalmology, rheumatology, and dermatology.*

**Medical Director**
Reporting to President, the Institute of Continuing Healthcare Education

♦   Identified strategies and managed development of educational activities for healthcare providers to ensure scientific accuracy and educational need
♦   Remained up-to-date with trends and emerging therapies in Institute therapeutic areas and regularly connected with specialty faculty to identify educational gaps in medical and pharmacy education
♦   Integrated toxicology into educational activities specializing in safety and adverse events for drugs in the Institute's key therapeutic areas
♦   Recruited and supervised medical writers
♦   Researched and constructed educational gaps for needs assessments
♦   Performed content validation, integrated adult learning principles, and ensured fair balance in all Institute needs assessments and educational activities

Dr. Allison A. Muller
Page 2 – April 2021

♦ Preceptor for Doctor of Pharmacy students from University of the Sciences and Thomas Jefferson School of Pharmacy

1993 – 2012

**The Children's Hospital of Philadelphia (CHOP), Philadelphia, Pennsylvania**
*Leading pediatric hospital known internationally as a resource for children and their families.*

**Clinical Manager/Clinical Program Director, Poison Control Center (PCC)**
**2002 – 2012**
Reporting to Senior Vice President, CHOP Care Network

♦ Supervised and developed a team of 21 nurses, pharmacists, interns, and administrative staff
♦ Managed department operating budget of $1.7 million
♦ Acted as medical correspondent for television, radio, and publication interviews related to toxicology
♦ Provided toxicology consultations as an on-call clinical toxicologist to both CHOP and regional healthcare providers regarding the care of poisoned patients
♦ Developed and presented professional continuing education programs to physicians, pharmacists, and nurses within CHOP and other hospitals and organizations in Southeastern Pennsylvania and Delaware
♦ Ensured that Department financial goals and objectives of active grants totaling $600,000-$800,000 were met
♦ Continually evaluated Department strategic objectives and identified partnerships to support objectives
♦ Evaluated and created Department processes to maintain certification requirements
♦ Constructed and evaluated poison-prevention community education programs that supported the PCC mission to reduce the incidence of unintentional injuries related to poisonings
♦ Developed a new public education program focused on educating families on how to make their homes greener and safer. Approached five foundations for program support and received three (3) grants totaling $16,000
♦ Developed and implemented a new staff scheduling model to address staff work-life balance, produced schedules on a more predictable and timelier basis, decreased overtime by 30%-40%, and increased staffing flexibility
♦ Developed a Department policy and procedures manual resulting in clarified expectations for all staff, streamlined approaches to clinical and operational issues, and increased accuracy of the PCC certification process
♦ Created a written curriculum for PharmD clerkship students rotating through the PCC. This promoted the Center as a site for area PharmD clerkship students and led to improved recruitment for a newly created position, Poison Information Intern
♦ Developed an evaluation tool for PCC case reviews and presented the tool and its impact on quality of care at the 2006 North American Congress of Clinical Toxicology

**Poison Information Specialist**
**1993 – 2002**
♦ Provided poison and drug information to healthcare professionals, the public, and pharmaceutical industry contracts

**Dr. Allison A. Muller**
**Page 3 – April 2021**

♦ Utilized Micromedex, PowerPoint, and Microsoft Word for data collection and professional presentations

**OTHER PROFESSIONAL EXPERIENCE**

**2001 – 2002**

**Riddle Memorial Hospital**
**Media, Pennsylvania**
**Staff Pharmacist** (contracted with Foremost Medical Systems)

**2001 – 2002**

**Freelance Medical Writer**
♦ Prepared materials for scientific meetings including abstracts and content for posters

**1994 – 1996**

**Morris Park Pharmacy, Philadelphia, Pennsylvania**
**Staff Pharmacist**

**1992 – 1993**

**Glaxo SmithKline (formerly SmithKline Beecham (SB) Pharmaceuticals)**
**Philadelphia, Pennsylvania**
**Pharmacy Intern/Drug Information Specialist**
♦ Researched, developed, and prepared launch letters to medical inquiries on SB products
♦ Utilized and updated in-house product information databases
♦ Actively participated in SB product teams (CNS division)

**FACULTY APPOINTMENTS**
**Adjunct Faculty (Instructor)**                                        **2005 – present**
University of Pennsylvania School of Veterinary Medicine, Department of Biomedical Sciences
Philadelphia, Pennsylvania
Principles of Pharmacology/Toxicology each Spring to Veterinary Medicine students

**Guest Lecturer**                                                      **2009 – 2011**
Salus University, Elkins Park, Pennsylvania
Herbals and Pediatric Toxicology each semester to Physician Assistant students

**Adjunct Faculty**                                                     **2002 – 2009**
Temple University School of Pharmacy, Philadelphia, Pennsylvania
Clerkship preceptor for 6th year Doctor of Pharmacy students

**Clinical Assistant Professor**                                        **2002 – 2009**
University of the Sciences, Philadelphia College of Pharmacy, Philadelphia, Pennsylvania
Clerkship preceptor for 6th year Doctor of Pharmacy students

**Guest Lecturer**                                                      **2003 – 2005**
Philadelphia College of Osteopathic Medicine, Philadelphia, Pennsylvania
Principles of Toxicology and Women's Health lecture for Physician Assistant students once a year

3

**Dr. Allison A. Muller**
**Page 4 – April 2021**

**Guest Lecturer**                                                              **2005 – 2007**
Arcadia University, Glenside, Pennsylvania
Principles of Toxicology and Women's Health lecture for Physician Assistant students once a year

**Guest Lecturer**                                                              **2003 – 2006**
Philadelphia University, Philadelphia, Pennsylvania
Principles of Toxicology and Women's Health lecture for Physician Assistant students once a year

**EDUCATION**
University of Arkansas for Medical Sciences, Little Rock, Arkansas            **1999**
Doctor of Pharmacy

University of the Sciences in Philadelphia, Philadelphia, Pennsylvania
Bachelor of Science in Pharmacy (cum laude) with minor in Humanities         **1993**

Cornell University (eCornell)
Three courses completed towards certificate in Human Resources Studies

**LICENSURE AND CERTIFICATION**
Fellow of the American Academy of Clinical Toxicology (FAACT); inducted 2019

Diplomate of the American Board of Applied Toxicology (D.ABAT); renewed 2020

Registered Pharmacist – Pennsylvania; renewed 2020

**RECENT CONTINUING EDUCATION (TOXICOLOGY)**
North American Congress of Clinical Toxicology (NACCT); September 25-27, 2019; Nashville, TN

North American Congress of Clinical Toxicology (NACCT); October 27-29, 2018; Chicago, IL

American Academy of Clinical Toxicology CE webinar: The 'dirty dozen": herbal products to stay away from; September 4, 2018

American Academy of Clinical Toxicology CE webinar: The antipsychotic medication epidemic in children: integrating toxicology with utilization; October 26, 2016

American Academy of Clinical Toxicology CE webinar: Managing chronic digoxin toxicity with anti-digoxin antibodies; October 4, 2016

American Academy of Clinical Toxicology CE webinar: Postmortem toxicology: what every toxicologist should know; August 2, 2016

American Academy of Clinical Toxicology CE webinar: The medical toxicologists' role in pharmacogenomics implementation; May 3, 2016

American Academy of Clinical Toxicology CE webinar: Occupational metal exposure in the boilermakers cohort; November 3, 2015

**Dr. Allison A. Muller**
**Page 5 – April 2021**

American Academy of Clinical Toxicology CE webinars: Flumazenil – then and now; October 22, 2015

North American Congress of Clinical Toxicology (NACCT); October 10-12, 2015; San Francisco, CA

American Academy of Clinical Toxicology CE webinar: Envenomations (Special Interest Section); September 1, 2015

American Academy of Clinical Toxicology CE webinar: Physostigmine; March 9, 2015

Toxicology Grand Rounds at The Poison Control Center at The Children's Hospital of Philadelphia (bimonthly: 2015 - present)

**CURRENT PROFESSIONAL ASSOCIATIONS**
American College of Medical Toxicology: 2017 to present

American Academy of Clinical Toxicology: 2005 to present

  2018 to present: American Academy of Clinical Toxicology Forensics-Medicolegal Interest Group (Member)

  2015 to 2017: American Academy of Clinical Toxicology Forensics-Medicolegal Interest Group (Co-Chair)

  2015 to present: American Board of Applied Toxicology Credentialing Committee (Member)

  2015 to present: American Board of Applied Toxicology Certification Renewal Committee (Member)

Association for Health Care Journalists: 2015 to present

American Council on Science and Health (Scientific Advisory Member): 2004 to present

**EDITORIAL POSITIONS**

| | |
|---|---|
| Editorial Reviewer, *The American Journal of Drug and Alcohol Abuse* | **2012** |
| Editorial Reviewer, *Lehne's Pharmacology for Nursing Care* | **2011** |
| Ancillary Writer, Edmunds M. *Introduction to Clinical Pharmacology* | **2010** |
| Editorial Reviewer, *Journal of Clinical Toxicology* | **2009** |
| Abstract Reviewer, North American Congress of Clinical Toxicology | **2006 – 2010** |
| Section Editor and Founder, "Pharm/Tox Corner," *Journal of Emergency Nursing* | **2002 – 2019** |
| Editorial Reviewer, *Addiction* (Blackwell Publishing) | **2003** |
| Editorial Reviewer, *Journal of Emergency Nursing* | **2002 – present** |

Dr. Allison A. Muller
Page 6 – April 2021

Editorial Reviewer, *Advance for Nurses* (Merion Publications Inc.)                    **2002**

**PRESENTATIONS**

Marijuana and synthetic cannabinoids: "high-lights" of the science for attorneys (Toxicology and the Law webinar series). Presented to the DC Bar. March 22, 2021.

Marijuana and synthetic cannabinoids: "high-lights" of the science for attorneys (webinar). Presented to the Alaska Bar Association; March 17, 2021.

Toxicology 101 for attorneys (webinar). Presented to LawLine; March 15, 2021.

The basics of toxicology for attorneys (webinar). Presented to the Oklahoma Bar Association; March 12, 2021.

Toxicology 101 (webinar). Presented to: Bar Association of Lehigh County; March 11, 2021.

Toxicology for attorneys: drugs and alcohol in civil cases. Presented to Goldberg, Miller, and Rubin, Philadelphia, PA; February 23, 2021.

Opioids: a primer in toxicology for attorneys (webinar). Presented to the Alaska Bar Association; February 17, 2021.

Opioids: what attorneys need to know (Toxicology and the Law webinar series). Presented to the DC Bar. February 8, 2021.

Medication misadventures (webinar). Presented to LawPractice CLE; February 3, 2021.

Toxicology pearls for attorneys (webinar). Presented to the Beverly Hills Bar Association; February 1, 2021.

Toxicology pearls for attorneys (webinar). Presented to the Alaska Bar Association; January 13, 2021.

Toxicology pearls for attorneys (Toxicology and the Law webinar series). Presented to the DC Bar. January 11, 2021

Marijuana and synthetic cannabinoids: "high-lights" of the science for attorneys (webinar). Presented to: New York County Lawyers Association (NYCLA); January 7, 2021.

Opioids: A primer in toxicology for attorneys (webinar). Presented to: New York County Lawyers Association (NYCLA); December 17, 2020.

Alcohol in civil cases – toxicology and the law (webinar). Co-presented with Scott Gemberling, Esq. to National Academy of Continuing Legal Education (NACLE); December 9, 2020.

Opioids and the law: How high is too high? (webinar). Co-presented with Joseph Lesniak, Esq to: New York State Bar Association; November 19, 2020.

Dr. Allison A. Muller
Page 7 – April 2021

What attorneys need to know about toxicology (webinar). Presented to: New York County Lawyers Association; November 12, 2020.

Marijuana and synthetic cannabinoids: "high-lights" of the science for attorneys (webinar). Presented to: Allegheny County Bar Association; October 13, 2020.

Marijuana and synthetic cannabinoids: science highlights (webinar). Presented to: California District Attorneys Association; October 1, 2020.

Opioids: what attorneys need to know (webinar). Presented to: Allegheny County Bar Association; September 29, 2020.

Marijuana and synthetic cannabinoids: the science and the law (webinar). Presented to: Camden County Bar Association; September 23, 2020.

Opioids: what prosecutors need to know (webinar). Presented to: California District Attorneys Association; September 17, 2020.

Toxicology pearls for attorneys (webinar). Presented to: Allegheny County Bar Association; September 15, 2020.

Postmortem toxicology for attorneys (webinar). Presented to: Delaware County Trial Lawyers Association; September 10, 2020.

Toxicology pearls for prosecutors (webinar). Presented to: California District Attorneys Association; September 3, 2020.

Opioids: what attorneys need to know (webinar). Presented to: LawPracticeCLE; July 9, 2020.

Postmortem toxicology for attorneys (webinar). Presented to: LawPracticeCLE; June 30, 2020.

Marijuana and synthetic cannabinoids – 'high-lights' of the science for attorneys (webinar). Presented to: Lancaster County Bar Association; May 28, 2020.

Marijuana and synthetic cannabinoids – "high-lights" of the science for attorneys (webinar). Presented to: LawPracticeCLE; May 27, 2020.

Opioids: what attorneys need to know (webinar). Presented to: Lancaster County Bar Association; May 21, 2020.

Toxicology pearls for attorneys (webinar). Presented to: Lancaster County Bar Association; May 14, 2020.

Toxicology for attorneys. Presented to: LawPracticeCLE; February 5, 2020; Washington, DC.

Postmortem toxicology for attorneys. Presented to: Delaware County Bar Association; December 4, 2019; Media, PA.

Dr. Allison A. Muller
Page 8 – April 2021

Toxicology for attorneys: science and evidentiary rules. Co-presented at: Philadelphia Bar Association Bench Bar Annual Conference; October 12, 2019; Atlantic City, NJ.

Occupational exposure to fentanyl and synthetic cannabinoids – science beyond the hype, programs, toxicology & pharmacology. Co-presented at: North American Congress of Clinical Toxicology (NACCT) – American Academy of Clinical Toxicology Occupational and Environmental Symposium; September 25, 2019; Nashville, TN.

Teaching toxicology to other professionals: the how and why of continuing medical education. Presented at: North American Congress of Clinical Toxicology (NACCT) – American College of Medical Toxicology Fellows-in-Training Visiting Professor Lecture; September 26, 2019; Nashville, TN.

Opioid abuse malpractice claims: what attorneys need to know. Presented to: MyLawCLE; June 19, 2019; Washington, DC.

Toxicology 101. Presented to: MyLawCLE; June 18, 2019; Washington, DC.

Opioids: a primer in toxicology for attorneys. Presented at: Pennsylvania Bar Association 35th annual Criminal Law Symposium; June 6, 2019; Harrisburg, PA.

Medication misadventures. Presented at: American Association of Legal Nurse Consultants; April 6, 2019; Louisville, KY.

Toxicology pearls for attorneys in one hour. Presented at: Lancaster Area Paralegal Association Criminal Law and Forensics Conference; April 12, 2019; Lancaster, PA.

The ABCs of writing and information searching. Presented to: TASA (webinar); January 29, 2019.

Medication misadventures. Presented to: Lancaster County Bar Association; January 16, 2019; Lancaster, PA.

Toxicology for lawyers. Presented to New Jersey Institute for Continuing Legal Education (webinar); January 24, 2019.

From toxicologist to entrepreneur: the basics for starting a consulting business. Presented at: North American Congress of Clinical Toxicology (NACCT) – American Board of Applied Toxicology Symposium; October 27, 2018; Chicago, IL.

Witness for the prosecution: honing your toxicological expertise as an expert witness (panel discussion). North American Congress of Clinical Toxicology (NACCT) – American Academy of Clinical Toxicology Forensics Special Interest Section Symposium; October 28, 2018; Chicago, IL.

Toxicology: the basics for nurse attorneys. Presented to: The American Association of Nurse Attorneys; August 17, 2018; Denver, CO.

Medication misadventures. Poster presented at: The American Association of Nurse Attorneys; August 16, 2018; Denver, CO.

**Dr. Allison A. Muller**
**Page 9 – April 2021**

Naloxone: the science and laws behind the opioid antidote. Poster presented at: The American Association of Nurse Attorneys; August 16, 2018; Denver, CO.

Toxicology 101 for attorneys. Presented to: Pennsylvania Bar Institute (PBI) (webinar); July 25, 2018.

What can dead people tell us? Postmortem toxicology for attorneys. Presented at: Pennsylvania Bar Association 35th annual Criminal Law Symposium; June 7, 2018; Harrisburg, PA.

Toxicology 101 for attorneys. Presented to: Camden County Bar Association; May 22, 2018; Camden, NJ.

What can dead people tell us? Postmortem toxicology for attorneys. Presented to: PBI (webinar); May 9, 2018

How to keep the "expert" in expert witness: tips for the new or seasoned expert witness. Presented to: TASA (webinar); March 15, 2018.

Toxicology pearls for human resource professionals. Presented to: Tri-State Human Resource Management; March 8, 2018; Mount Laurel, NJ.

Toxicology 101 for attorneys. Presented at: Styliades, Mezzanotte & Hasson; February 9, 2018; Philadelphia, PA.

Toxicology 101. Presented to: MyLawCLE; February 5, 2018; Washington, DC.

On becoming and being an expert witness: sharing pearls, pitfalls, and venues. Co-presented to: American Academy of Clinical Toxicology (webinar); December 5, 2017.

Toxicology 101 for attorneys. Presented to: Lehigh County Bar Association; September 7, 2017; Allentown, PA.

Toxicology 101 for attorneys. Presented to: Berks County Bar Association; July 25, 2017; Reading, PA.

Naloxone: the antidote to the opioid epidemic? What lawyers need to know. Presented at: Jenkins Law Library; June 13, 2016; Philadelphia, PA.

Naloxone: the antidote to the opioid epidemic? What lawyers need to know. Presented to: Lehigh County Bar Association; May 12, 2017; Allentown, PA.

Medication misadventures: 10 tips for attorneys. Presented at: Marshall Dennehey; May 10, 2017; Philadelphia, PA.

Medication misadventures. Presented at: Stark & Stark; March 7, 2017; Lawrenceville, NJ.

Naloxone: the antidote to the opioid epidemic? What lawyers need to know. Presented to: PBI (webinar); December, 19, 2016.

Medication misadventures: 10 tips for attorneys. Presented to: Jenkins Law Library; December 14, 2016; Philadelphia, PA.

Dr. Allison A. Muller
Page 10 – April 2021

Toxicology 101 for attorneys. Presented to: Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C.; December 6, 2016; Philadelphia, PA.

Tales from the trenches: starting your own consulting business. Presented to: Institute for Management Consultants; November 17, 2016; King of Prussia, PA.

Naloxone: the science and the laws. Presented to: The American Society for Pharmacy Law (annual conference); November 11, 2016; Austin, TX.

Medication misadventures: 10 tips for attorneys. Presented to: Lehigh County Bar Association; November 2, 2016; Allentown, PA.

Naloxone. Presented to: The Poison Control Center of the Children's Hospital of Philadelphia; October 18, 2016; Philadelphia, PA.

Medication misadventures: 10 tips for attorneys. Presented to: Chester County Bar Association; September 29, 2016; West Chester, PA.

Medical marijuana passed: now what? Panel moderator and speaker for the 64th annual joint dinner meeting of the Bar Association of Lehigh County and the Lehigh County Medical Society; September 20, 2016; Allentown, PA.

Toxicology pearls for plaintiff attorneys. Presented to: Delaware County Trial Lawyers Association; September 8, 2016; Media, PA.

Medication misadventures: 10 tips for attorneys. Presented to: Naulty, Scaricamazza & McDevitt, LLC; August 24, 2016; Philadelphia, PA.

Toxicology 101 for attorneys. Presented at: Lehigh County Bar Association; June 29, 2016; Allentown, PA.

Toxicology 101 for attorneys. Presented at: Jenkins Law Library; June 15, 2016; Philadelphia, PA.

Medication misadventures: 10 tips for attorneys. Presented at: Philadelphia Bar Association; June 15, 2016; Philadelphia, PA.

Medication misadventures: 10 tips for attorneys. Presented to: Pennsylvania Bar Institute (webinar); June 8, 2016.

Toxicology 101 for attorneys. Presented at: Pennsylvania Bar Association Annual Criminal Law Symposium; June 3, 2016; Harrisburg, PA.

The ABCs of toxicology for paralegals. Presented to: Montgomery County Paralegals Association; May 19, 2016; Plymouth Meeting, PA.

Toxicology 101 for attorneys. Presented to: TASA (webinar); May 12, 2016.

**Dr. Allison A. Muller**
**Page 11 – April 2021**

Toxicology 101 for attorneys. Presented at: Bucks County Bar Association; April 20, 2016; Doylestown, PA.

Continuing medical education: the nuts and bolts. Presented at: American Medical Writers Association Mid-Atlantic Chapter Annual Conference; April 4, 2016; Gaithersburg, MD.

Toxicology 101 for attorneys. Presented to: Pennsylvania Bar Institute (webinar); February 17, 2016.

Toxicology for medical writers. Presented at: American Medical Writers Association Roundtable Symposium; November 6, 2015; Chevy Chase, MD.

Protecting your liability in practice: it's not a roll of the dice. Presented at: North American Congress of Clinical Toxicology (NACCT) – American Board of Applied Toxicology Symposium; October 10, 2015; San Francisco, CA.

Toxicology 101 for attorneys. Presented to: Chester County Bar Association; September 10, 2015; West Chester, PA.

Approach to poisoned adult and tot. Presented to: Emergency Medicine residents at Cooper Hospital; October 14, 2010; Camden, NJ.

Management pitfalls. Presented to: Delaware Valley Society of Health System Pharmacists; September 21, 2010; Drexel Hill, PA.

Poison Center efficiency. Presented at: American Association of Poison Control Centers Midyear Manager's Meeting; February 24, 2010; Charleston, SC.

The top ten management pitfalls and how to avoid them. Co-presented at: American Association of Poison Control Centers Midyear Manager's Meeting; February 24, 2010; Charleston, SC.

Muller AA, Henretig FM. Taking another look at pediatric ocular exposures. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 25, 2009; San Antonio, TX.

Basic toxicology. CME program for the medical staff at Holy Redeemer Hospital; May 6, 2009; Meadowbrook, PA.

Disaster preparedness: The Poison Center's role. Presented at: PA Department of Health Symposium; May 22, 2008; State College, PA.

Toxic in a single dose. Presented at: Delaware County Pennsylvania Pharmacist's Association; May 14, 2008; Springfield, PA.

An overview of Poison Control Centers and common pediatric poisonings. Webinar for SafeKids Pennsylvania; March 11, 2008.

Toxic in a single dose. CE program for Philadelphia Emergency Nurses Association chapter; December 12, 2007; Philadelphia, PA.

Dr. Allison A. Muller
Page 12 – April 2021

Guest speaker for Child Safety Course at the Hospital of the University of Pennsylvania; November 15, 2007, and April 17, 2008; Philadelphia, PA.

Muller AA, Henretig FM. Prolonged hallucinations following the therapeutic use of antihistamines and decongestants in young children. Poster presented at: North American Congress of Clinical Toxicology (NACCT); October 2007; New Orleans, LA.

An overview of certified Poison Control Centers. Presented at: Drexel University School of Medicine; June 28, 2007; Philadelphia, PA.

Coordinator and presenter for CHOP Poison Control Center Open House Recruitment Event. March 2006 and August 2007; Philadelphia, PA.

Guest speaker for Child Safety Course at the Hospital of the University of Pennsylvania; March 15, 2007; Philadelphia, PA.

Muller AA. Impact of a quality assurance tool for call recordings. Poster presented at: North American Congress of Clinical Toxicology (NACCT); October 2006; San Francisco, CA.

Calello DP, Henretig FM, Muller A, Shaw LM, Osterhoudt KC. One pill is one too many: profound hypoglycemia in adults mistakenly given a single sulfonylurea. Poster presented at: North American Congress of Clinical Toxicology (NACCT); October 2006; San Francisco, CA.

Guest speaker for Child Safety Course at the Hospital of the University of Pennsylvania; May 25, 2006; Philadelphia, PA.

A primer in toxicology: herbals. Advanced practice nurses continuing education program, Children's Hospital of Philadelphia; March 8 and 16, 2006; Philadelphia, PA.

Muller AA. A quality assurance tool for call recordings. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 2005; Orlando, FL.

The top ten pediatric poisonings. Presented to advanced practice nurses at: The Children's Hospital of Philadelphia; June 15, 2005; Philadelphia, PA.

Guest speaker for Child Safety Course at the Hospital of the University of Pennsylvania; June 15, 2005; Philadelphia, PA.

A primer in pharmacokinetics. Presented to: toxicology fellows at The Children's Hospital of Philadelphia; April 28, 2005; Philadelphia, PA

Tegzes JH, Scaglione JM, Muller AA, Hansen SR. Vitamin K for them all? A multi-center review of treatment of brodifacoum ingestion in animals. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 2004; Seattle, WA.

New drugs of abuse. Faculty presenter for CME activity at Frankford Health Systems; June 1, 2004; Philadelphia, PA.

Dr. Allison A. Muller
Page 13 – April 2021

Incidence of PCP use post 9/11/2001. Poster presented at: The European Association of Poisons Centers and Clinical Toxicologists (EAPCCT) International Congress; June 2004; Strasbourg, France.

The influence of the media on oxycodone abuse. Poster presented at: The European Association of Poisons Centers and Clinical Toxicologists (EAPCCT) International Congress; June 2004; Strasbourg, France.

Temporal relationship of oxycodone media attention and reports of oxycodone exposures to poison centers. Poster presented at: European Association of Poison Centers and Clinical Toxicologists (EAPCCT) International Congress; June 2004; Strasbourg, France.

A primer in toxicology. Presented at: University of Pennsylvania School of Nursing; May 20, 2004; May 27, 2003; and July 22, 2002; Philadelphia, PA.

Career Pathways roundtable. Presented at: The University of the Sciences; November 20, 2003; Philadelphia, PA.

Presenter at Toxicology Workshop, Intensive Course in Pediatric Emergency Medicine, Children's Hospital of Philadelphia; November 5, 2003; Philadelphia, PA.

Pill identifications – rethinking the Poison Center's role. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 2003; Chicago, IL.

New drugs of abuse. Grand Rounds presentation at Frankford Health Systems (Emergency Medicine); June 18, 2003; Philadelphia, PA.

Drugs of abuse. Continuing education program for Pennsylvania Pharmacist's Association and Delaware County Medical Society; April 9, 2003; Springfield, PA.

HIPAA privacy rules: impact on Poison Control Centers. Presented at: Children's Hospital of Philadelphia; March 24, 2003; Philadelphia, PA.

A career in poison control for pharmacists. Presented at: University of the Sciences; March 5, 2003; Philadelphia, PA.

New drugs of abuse. Faculty presenter for CME activity at Frankford Health Systems; January 21, 2003; Philadelphia, PA.

Presenter at Toxicology Workshop, Intensive Course in Pediatric Emergency Medicine, Children's Hospital of Philadelphia; November 6, 2002; Philadelphia, PA.

Prolonged hypotension in acute guanfacine overdose. Poster presented at: The European Association of Poisons Centers and Clinical Toxicologists (EAPCCT) International Congress; May 24, 2002; Lisbon, Portugal.

A primer in toxicology. Presented at: University of Pennsylvania School of Nursing; July 22, 2002; Philadelphia, PA.

**Dr. Allison A. Muller**
**Page 14 – April 2021**

A primer in toxicology. Pharmacist continuing education program for Pennsylvania Pharmacist's Association – Delaware County Chapter; April 30, 2002; Springfield, PA.

Toxicology Case Review. Weekly presenter at Poison Control; February 2002 – February 2012; Children's Hospital of Philadelphia.

A primer in toxicology. Presented at: University of Pennsylvania School of Nursing; May 24, 2001; Philadelphia, PA.

A primer in toxicology. Presented at: University of Pennsylvania School of Nursing; May 30, 2000; Philadelphia, PA.

Recent advances in toxicology. Faculty presenter for CME program. Brandywine Hospital; February 25, 2000; Coatesville, PA.

Medications and lupus. Workshop speaker and coordinator. Lankenau Hospital, April 19, 1997; Wynnewood, PA.

The effects of risperidone in overdose. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 1995; Rochester, NY.

Hospital follow-up quality assurance program. Poster presented at: North American Congress of Clinical Toxicology (NACCT); September 1995; Rochester, NY.

**PUBLICATIONS**
Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COPD update. February 2021.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Tildrakizumab-asmn [Ilumya]. February 2021.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Triptorelin pamoate [Trelstar]. November 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Deutetrabenazine [Austedo] . November 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Midazolam nasal spray [Nayzilam]. October 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Immune globulin subcutaneous [Hizentra]. October 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Plecanatide [Trulance]. September 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Cenobamate [Xcopri]. August 2020.

**Dr. Allison A. Muller**
**Page 15 – April 2021**

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Becaplermin [Regranex]. June 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Diabetes update. June 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COVID-19 testing. June 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Factor IX recombinant [Idelvion]. June 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Growth hormone. May 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Pegfilgrastim – jmdb [Fulphila]. April 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin aspart [Fiasp]. April 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Risperidone extended-release injectable [Perseris]. February 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Rituximab - abbs [Truxima]. February 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Antibiotics. January 2020.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Glatiramer acetate [Glatopa]. November 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Pulmonary arterial hypertension. August 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Epilepsy. August 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Abaloparatide [Tymlos]. July 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Desmopressin acetate [Nocdurna]. July 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Bezlotoxumab [Zinplava]. May 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Mepolizumab [Nucala]. May 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Overactive bladder. May 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COPD. March 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Sodium zirconium cyclosilicate [Lokelma]. February 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Cannabidiol [Epidiolex]. January 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Epoetin alfa-epbx [Retacrit]. January 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Von Willebrand factor, recombinant [Vonvendi]. January 2019.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Latanoprostene bunod [Vyzulta]. November 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin glargine and lixisenatide [Soliqua]. November 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Meropenem and vaborbactam [Vabomere]. October 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Aripiprazole [Abilify Maintena]. October 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Abiraterone acetate [Yonsa]. September 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Flu vaccine update. September 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Glycopyrrolate inhalation solution [Lonhala Magnair]. August 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin glargine [Toujeo]. July 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Immunoglobulin subcutaneous, human [Hizentra]. July 2018.

**Dr. Allison A. Muller**
**Page 17 – April 2021**

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Aripiprazole lauroxil extended-release injectable suspension [Aristada Initio]. July 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Suvorexant [Belsomra]. May 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Antihemophilic factor recombinant, single chain [Afstyla]. May 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Roflumilast [Daliresp]. May 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin lispro injection [Admelog]. April 2018.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Intravenous agents for the treatment of MRSA skin infections. April 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Fluticasone furoate, umeclidinium, vilanterol [Trelegy Ellipta]. February 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Delafloxacin [Baxdela]. February 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Recombinant zoster vaccine [Shingrix]. January 2018.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Dulaglutide [Trulicity]. October 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Sonidegib [Odomzo]. October 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Naldemine [Symproic]. September 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Infliximab [Renflexis/Inflectra]. September 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Interferon beta-1b [Extavia]. July 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Rifaximin [Xifaxan]. July 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Indacaterol/glycopyrrolate [Utibron]. July 2017.

Dr. Allison A. Muller
Page 18 – April 2021

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Naloxegol [Movantik]. July 2017.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Congestive heart failure: overview of the evidence. July 2017.

Muller AA. "Revolutionary" drug approved for spinal muscular atrophy. *Pharmacy Today*. April 2017; 23(4):26.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Pimavanserin [Nuplazid]. April 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Antihemophilic factor (recombinant) [Nuwiq]. March 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Alirocumab [Praluent]. March 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Glycopyrrolate/formoterol fumarate [Bevespi]. February 2017.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Hydrocodone bitartrate [Hysingla]. February 2017.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Diabetes agents. February 2017.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COPD. January 2017.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Bleeding disorders. January 2017.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Pharmacogenomics. December 2016.

Muller AA. Naloxone: The science and laws behind the antidote. *ABA Health eSource*, Opioid Epidemic Special Edition. American Bar Association Health Law Section, www.americanbar.org; October 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Buprenorphine buccal film [Belbuca]. September 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Paliperidone [Invega]. October 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Daptomycin. October 2016.

Dr. Allison A. Muller
Page 19 – April 2021

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Sacubitril/valsartan [Entresto]. October 2016.

Advances in proteomics and genomics (parts 1 and 2): 3 credit online webinar for physician continuing education program. Physicians' Education Resource. www.gotoper.com. August 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin degludec [Tresiba]. August 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Lacosamide [Vimpat]. August 2016.

Muller AA. New cancer drugs pave way for precision medicine. *Pharmacy Today*. July 2016; 22(7):28-29.

Muller AA. First-in-class PD-L1 inhibitor targets urothelial carcinoma. *Pharmacy Today*. July 2016; 22(7):30.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin glargine [Toujeo]. July 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Linaclotide [Linzess]. July 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Oxycodone ER [Xtampza]. June 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Dextromethorphan/quinidine [Nuedexta]. May 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Immune globulin intravenous 10% [Bivigam]. May 2016.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COPD. May 2016.

Muller AA. Toxicology 101 for attorneys: principles for drug and alcohol related cases. *For the Defense*. April 2016; 1(2):52-56.

Muller AA. New data on PPI risks: should patients be concerned? *Pharmacy Today*. April 2016; 22(4):32.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Diabetes agents. April 2016.

Muller AA. Clinical Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Texting and medication adherence. April 2016.

Muller AA. Clinical Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Update on immunization schedules. April 2016.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Pembrolizumab: an effective option for patients with some types of non-small cell lung cancer. http://www.aphadruginfoline.com. Published March 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Elbasvir/grazoprevir [Zepatier]. March 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Lesinurad [Zurampic]. March 2016.

Muller AA. Three new targeted agents for non-small cell lung cancer. *Pharmacy Today*. February 2016; 22(2):26-27.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Antihemophilic factors [Advate and Adynovate]. February 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Buprenorphine [Butrans]. February 2016.

Chiu K, Choe L, **Muller AA**. FDA update 2015: initiatives impacting today's practice (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. January 2016.

SCOPE of Pain (REMS program for safe opioid prescribing): monograph for physician continuing education program, Boston University. https://www.scopeofpain.com/online-training/. January 2016.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Tedizolid phosphate [Sivextro]. January 2016.

Muller AA. Two first-in-class agents for multiple myeloma. *Pharmacy Today*. January 2016; 22(1):22.

Optimizing treatment strategies for chemotherapy-induced nausea and vomiting: online webinar for physician continuing education program. Physicians' Education Resource. www.gotoper.com. December 2015.

Pound MW, **Muller AA**. New drugs update 2015 (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. December 2015.

Muller AA. Talimogene laherparepvec – first oncolytic virus therapy. *Pharmacy Today*. December 2015; 21(12):32.

Muller AA. Trabectedin – a new option for two types of soft-tissue sarcomas. *Pharmacy Today*. December 2015; 21(12):38.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. BEERS criteria. December 2015.

Dr. Allison A. Muller
Page 21 – April 2021

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Oral anticoagulants. December 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Dalbavancin [Dalvance]. December 2015.

Peabody H, **Muller AA**. Patient assistance programs: technicians impacting access to care (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. December 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Ceftazidime-avibactam [Avycaz]. November 2015.

Muller AA. Trifluridine/tipiracil – third-line oral agent for resistant metastatic colorectal cancer. *Pharmacy Today*. November 2015; 21(11):31.

Cimino NM, **Muller AA**. Controlled substances: regulatory overview and strategies for preventing misuse and diversion (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. October 2015.

Muller AA. Flibanserin – first agent for female sexual dysfunction. *Pharmacy Today*. October 2015;21(10):39.

Muller AA. Evolocumab – second-in-class agent for lowering cholesterol. *Pharmacy Today*. October 2015;21(10):40.

Muller AA. Rolapitant – chemotherapy-induced delayed nausea and vomiting. *Pharmacy Today*. October 2015;21(10):42.

Muller AA. Sonidegib – second-in-class oral agent for basal cell carcinoma. *Pharmacy Today*. October 2015;21(10):44.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Glatiramer acetate injection [Glatopa]. October 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Secukinumab [Cosentyx]. October 2015.

Ayers P, **Muller AA**. Tenets for safe delivery of parenteral nutrition (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. September 2015.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Flu vaccine update. September 2015.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. IV push drugs: their safe use. September 2015.

Dr. Allison A. Muller
Page 22 – April 2021

Stevens JT, **Muller AA**. Extemporaneous compounding of non-sterile preparations, part II (American Society for Health-System Pharmacists pharmacy technician CE monograph); www.ashp.org. August 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Sacubitril/valsartan [Entresto]. August 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Roflumilast [Daliresp]. August 2015.

Muller AA. Clinical Article for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Sitagliptin [Januvia]. August 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Increased cardiovascular risk with abacavir: when and why. http://www.aphadruginfoline.com. August 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Palbociclib: an emerging option for advanced breast cancer. http://www.aphadruginfoline.com. August 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Head lice: updated treatment recommendations for children. http://www.aphadruginfoline.com. July 2015.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. New treatments for irritable bowel syndrome. July 2015.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. COPD. July 2015.

Muller AA. Clinical Practice Update for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Intravenous antifungal agents. June 2015.

Muller AA. Clinical Spotlight for Managed Healthcare Associates, Floral Park NJ. www.mhainc.com. Insulin glargine injection [Toujeo]. June 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Coenzyme Q10 for statin-induced myopathy. http://www.aphadruginfoline.com. Published April 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Knee osteoarthritis: intra-articular treatments beat acetaminophen, NSAIDS. http://www.aphadruginfoline.com. Published March 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Nivolumab: an emerging option for advanced melanoma. http://www.aphadruginfoline.com. Published March 2015.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Risperidone: an add-on therapy for pediatric attention deficit/hyperactivity disorder. http://www.aphadruginfoline.com. Published November 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Vaccines and biologics: can they mix? http://www.aphadruginfoline.com. Published October 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Digoxin for atrial fibrillation: how safe is it? http://www.aphadruginfoline.com. Published August 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Efavirenz and suicidality: new data solidify the link. http://www.aphadruginfoline.com. Published August 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: SSRIs + NSAIDs: Increased risk for GI bleeding. http://www.aphadruginfoline.com. Published July 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: A different beat? CAM for arrhythmias. http://www.aphadruginfoline.com . Published June 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Ensuring patient safety in measuring, administering liquid pediatric drug doses. http://www.aphadruginfoline.com. Published May 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Tenofovir–diclofenac drug linked to increased risk of acute kidney injury. http://www.aphadruginfoline.com. Published May 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Varenicline: mounting evidence supports lack of neuropsychiatric effects. http://www.aphadruginfoline.com. Published April 2014.

Muller AA. American Pharmacists Association (APhA) Drug Info Line: Study sheds light on link between antiepileptic drug use and suicidality. http://www.aphadruginfoline.com. Published February 2014.

Fong HF, **Muller AA**. An unexpected clinical course in a 29-day-old infant with ethanol exposure. *Pediatr Emerg Care*. 2014;30: 111-113.

Hayes BD, Klein-Schwartz W, Clark RF, **Muller AA**, Miloradovich JE. Comparison of toxicity of acute overdoses with citalopram and escitalopram. *J Emerg Med*. 2010;39:44-48.

Sirianni AJ, Osterhoudt KC, Calello DP, **Muller AA**, Waterhouse MR, Goodkin MB, Weinberg GL, Henretig FM. Successful use of lipid emulsion to resuscitate a patient with prolonged cardiovascular collapse after overdose of bupropion and lamotrigine. *Ann Emerg Med*. 2008;51: 412-415.

Muller AA, Henretig FM. The vitamins. In: Shannon MW, Borron SQ, Burns MJ, eds. *Haddad and Winchester's Clinical Management of Poisoning and Drug Overdose*. 4th ed. Philadelphia: Saunders Elsevier; 2007.

Muller AA, Wenger WW, Osterhoudt K. Heroin: what's in the mix? (letter). *Ann Emerg Med.* 2007;50:352-353.

Muller AA. Common nontoxic pediatric exposures. *J Emerg Nursing.* 2005;31:494-496.

Calello DP, Muller AA, Henretig FM, Osterhoudt KC. Benzocaine: not dangerous enough? *Pediatrics.* 2005;115:1452.

Muller AA. Intravenous Acetylcysteine (monograph). Philadelphia, PA: The Children's Hospital of Philadelphia; October 2004.

Muller AA. New drugs of abuse update: foxy methoxy. *J Emerg Nurs.* 2004;30(5):507-508.

Muller AA. L-carnitine (monograph). Philadelphia, PA: The Children's Hospital of Philadelphia; June 2004.

Muller AA. Managing pediatric ingestions of the new antidiabetic agents. *J Emerg Nurs.* 2004;30(2):183-184.

Muller AA. Carbon monoxide: case scenarios and update on ED therapy. *J Emerg Nurs.* 2004;30(1):88-90.

Muller AA. Vitamin A. In: Wexler P, ed. *The Encyclopedia of Toxicology.* 2nd ed. San Diego, CA: Academic Press; 2004.

Muller AA. Vitamin E. In: Wexler P, ed. *The Encyclopedia of Toxicology.* 2nd ed. San Diego, CA: Academic Press; 2004.

Muller AA. Vitamin D. In: Wexler P, ed. *The Encyclopedia of Toxicology.* 2nd ed. San Diego, CA: Academic Press; 2004.

Muller AA, Henretig FM. Poinsettias. In: Wexler P, ed. *The Encyclopedia of Toxicology.* 2nd ed. San Diego, CA: Academic Press; 2004.

Muller AA, Scharman EJ. Recognizing, preventing and treating the global threat of rabies. Continuing Education Program for Pharmacists (monograph). August 2003.

Muller AA. Mushrooms: toxins right in your own backyard. *J Emerg Nurs.* 2003;29(5):483-485.

Contributor. Are you ready for the newest club drug overdoses? *ED Nursing.* 2003;6. https://www.ahcmedia.com/articles/28570-are-you-ready-for-the-newest-8216-club-drug-8217-overdoses-here-are-life-saving-tips. Accessed February 4, 2017.

Greenberg MI, Hendrickson RG, **Muller AA**. Occupational exposure to cephalosporins leading to *Clostridium difficile* infection (letter). *J Toxicol Clin Toxicol.* 2003;41(2):205-206.

Muller AA. Small amounts of some drugs can be toxic to young children: one pill or one swallow can require aggressive treatment. *J Emerg Nurs.* 2003;29(3):290-293.

Muller AA. Aspirin poisonings — challenges and clinical implications for ED nurses. *J Emerg Nurs.* 2003;29(2):177-179.

Muller AA. GHB, it's still out there. *J Emerg Nurs.* 2003;29(1):72-75.

Muller AA. Poinsettia. In: Osterhoudt K, Perrone J, DeRoos F, Henretig F, eds. *Toxicology Pearls.*
Philadelphia, PA: Elsevier Mosby; 2004:225.

Muller AA. Clonidine. In: Osterhoudt K, Perrone J, DeRoos F, Henretig F, eds. *Toxicology Pearls.*
Philadelphia, PA: Elsevier Mosby; 2004:192.

Pennsylvania Department of Health: Emergency Medical Systems (EMS) Task Force: develop and draft
protocols for statewide EMS systems; March 2001.

Acri (Muller) A, Henretig F. Effects of risperidone in overdose. *Am J Emerg Med.* 1998;16:498-501.

25

Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW REYNOLDS, | ) | No.: 5:21-cv-01208 |
| Plaintiff; | ) | |
| | ) | **AFFIDAVIT OF** |
| vs. | ) | **MICHAEL A. LO PRESTI** |
| | ) | |
| WILLERT MFG. CO., LLC, | ) | |
| Defendant. | ) | |

### AFFIDAVIT

I, Michael A. Lo Presti, do hereby declare that:

1.  I am an individual competent to make this affidavit.

2.  I have personal knowledge of the facts set forth below.

3.  This Affidavit is provided in support of the above-captioned matter and is consistent with that which I intend to testify at trial.

4.  At trial, if called, I will testify consistent with my previously submitted expert report: chiefly, whether or not Plaintiff operated "high voltage" electricity.


I understand that false statements made herein are subject to the penalties of 28 U.S.C.

§1746 relating to unsworn falsification to authorities.


Dated:_____          *Michael A. Lo Presti (original signature on file)*___
                             Michael A. Lo Presti



Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Licensed Professional Engineers in:
VA, MD, DC, WVA, NY, NJ, PA, & NC

**Presti & Company, Inc.**
45915 Maries Road
Suite 136
Dulles, VA 30166
p. 703.430.4757
f. 703.430.1077
www.presti.com

22 July 2021

Mr. Steven T. Auerbach
Law Offices of Steven T. Auerbach
822 Montgomery Ave
Suite #210
Narberth PA, 19072          Sent via email: Auerbach_Steven@gmail.com

Re:  Expert Letter of Findings: Our File: 21-0364-01 Reynolds v Willert Mfg.

Dear Mr. Auerbach:

This letter represents my findings relating to the matter of Mr. Matthew Reynolds v. Willert Manufacturing Company, LLC, located at 447 Old Swede Road, Douglassville, PA 19518 in Berks County, Pennslyvania.

In this matter, a clarification by an expert is requested regarding the extent of electrical hazards that may have existed during Mr. Reynolds's employment as a Maintenance Manager. Our investigation sought to determine the reasonable expectation of the required job duties of the maintenance manager and whether or not these duties would likely have included the operation or control of high-voltage electricity within the Willert manufacturing plant.

I have explicitly been asked to define the term "High-Voltage" and to determine whether or not a maintenance manager would be reasonably expected to operate or control such voltage.

My findings are based on reviewing the case materials, my experience, my involvement as a former manufacturing engineering manager, and my practical experience designing and maintaining building electrical systems and performing facilities maintenance.

My findings and opinions are made to a reasonable degree of engineering certainty and are as follows:

1. *Definition of High-Voltage*.

According to engineering industry-standard ANSI C84.1, Electric Power Systems Voltage Ratings, High-Voltage is defined as systems with an operating voltage between 115,000 Volts and up to 230,000 Volts. The following Table 1 shows various voltage ranges in tabulated format.

 **PRESTI**

Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Table 1 – Standard nominal three-phase system voltages per ANSI C84.1-1989

| Voltage Class | Three-wire | Four-wire |
|---|---|---|
| Low Voltage | | 208 Y/120 |
| | 240 | 240/120 |
| | 480 | 480 Y/277 |
| | 600 | |
| Medium Voltage | 2,400 | |
| | 4,160 | 4,160 Y/2400 |
| | 4,800 | |
| | 6,900 | |
| | | 8,320 Y/4800 |
| | | 12,000 Y/6,930 |
| | | 12,470 Y/7,200 |
| | | 13,200 Y/7,620 |
| | 13,800 | 13,800 Y/7,970 |
| | | 20,780 Y/12,000 |
| | | 22,860 Y/13,200 |
| | 23,000 | |
| | | 24,940 Y/14,400 |
| | 34,500 | 34,500 Y/19,920 |
| | 46,000 | |
| | 69,000 | |
| High Voltage | 115,000 | |
| | 138,000 | |
| | 161,000 | |
| | 230,000 | |
| Extra-High Voltage | 345,000 | |
| | 500,000 | |
| | 765,000 | |
| Ultra-High Voltage | 1,100,000 | |

High-Voltage power systems are used in long-range power transmission systems and are rarely used in manufacturing or production environments. Manufacturing and production environments which

 **PRESTI**

Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Law Offices of Steven T. Auerbach
*Mr. Steven T. Auerbach, Esq.*
21-0364-01 Reynolds v. Willert Mfg
Page -3- of -7-

are routinely seen by maintenance personnel and production workers are generally limited to 480V or less utilization voltage which is the voltage of the line terminals of the connected equipment. This voltage is considered Low Voltage and is the most likely the voltage seen in a typical manufacturing plant. Maintenance personnel generally are required to perform electrical maintenance on equipment connected at these low line voltages when the power to the equipment is turned off and rendered inoperable by some form of Lock-out/Tag-out safety procedure. OSHA requires the Lock-Out/Tag-Out safety procedure to increase employee safety. Medium-voltage systems are often used as service voltages which is the voltage at the point where the electrical system of the utility supplier and the manufacturing user are connected. High Voltage electrical systems would not be utilized in a manufacturing or production environment.

To further validate the correct terminology, the United States Department of Agriculture has published guidelines for Rural Utilities Service, Bulletin 1724D-114, which references explicitly low voltage as shown in the bulletin, Page 4 labeled Table 1 below.

a   Nominal System Voltage Standards

Table 1 presents the nominal voltages for secondary circuits established in ANSI C84.1-2016 and is recommended by RUS for its borrowers to serve their residential and commercial consumers. The voltage limits established and recommended in ANSI C84.1-2016 are used by the majority of the electric utilities in the United States.

TABLE 1: Nominal Low-Voltage Standards.[1]

| Nominal System Voltages | Connection and Phase |
|---|---|
| 120-V | Two-wire, single-phase |
| 120/240-V | Three-wire, single-phase |
| 240/120-V | Four-wire, three-phase delta |
| 208Y/120-V | Four-wire, three-phase wye |
| 480Y/277-V | Four-wire, three-phase wye |
| 480-V | Three-wire, three-phase delta |

I have therefore determined to a high degree of engineering certainty that it is highly unlikely that Mr. Reynolds was required to operate and control high-voltage electrical systems.



Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Law Offices of Steven T. Auerbach
*Mr. Steven T. Auerbach, Esq.*
21-0364-01 Reynolds v. Willert Mfg
Page -4- of -7-

2. <u>*Willert Manufacturing Facility Safety Equipment and Capabilities.*</u>

Based on the information provided, which includes photographs and an affidavit by Mr. Reynolds, it is unlikely the Willert Manufacturing Company and their employees possessed the specialized knowledge, practical experience, and necessary safety equipment to operate, control, or maintain high-voltage electrical equipment. Furthermore, there is no evidence that Willert possesses or supplied to their employees the specialized equipment, which includes rated tools, thermography equipment, infrared thermometers, a high-voltage circuit breaker disconnecting pole, and an Arc-Flash suit, necessary to control, operate or maintain high-voltage electrical systems. Without this equipment, the Willert facility does not comply with the guiding NFPA Standard 70E, Standard for Electrical Safety in the Workplace, and likely would have violated OSHA regulations regarding employee safety.

3. <u>*Personal Practical Experience at a Manufacturing Plant, as Manager-on-duty during Electrical Transformer Explosion.*</u>

In the mid, 1990's this expert author was the Manager-on-Duty and the senior ranking manager at the Nautilus International, Inc., 200,000 square foot manufacturing plant located on Powerhouse Road in Independence, Virginia. On one Saturday morning, one of the building service transformers exploded, resulting in a plant power outage and electrical fire. The burning transformer required electrical isolation, which is the methodical de-energization of specific medium-voltage electrical circuits to mitigate the damage and contain the fire. The medium-voltage service at this facility was 13,200 volts. As the fire progressed, it was recognized that our maintenance staff which included licensed electricians, did not possess the necessary equipment to perform medium-voltage switching. As a result, we were forced to rely on the trained electrical utility linemen to de-energize the circuits. Practical experience suggests Willert staff would not have possessed adequate training to control and operate and maintain high-voltage electrical equipment.

*Information used in developing findings.*

In formulating my opinion, I have referenced the following materials:

1. Case materials provided by Counsel including the Complaint, and affidavits,

2. Photos provided by case documents produced in Discovery,

 **PRESTI**          Consulting Professional Engineers          Law Offices of Steven T. Auerbach
                     Forensic Engineering & Litigation Support          *Mr. Steven T. Auerbach, Esq.*
                     Specialty Inspection & Testing          21-0364-01 Reynolds v. Willert Mfg
                                                             Page -5- of -7-

3.  ANSI C84.1-2020: Electric Power Systems Voltage Ratings (60 Hz), American National Standards, Institute.

4.  UNITED STATES DEPARTMENT OF AGRICULTURE RURAL UTILITIES SERVICE BULLETIN 1724D-114 RD-GD-2017-90, SUBJECT: Voltage Regulator Application on Rural Distribution Systems

5.  NFPA 70E, Standard for Electrical Safety in the Workplace. National Fire Protection Association.

6.  Other pertinent scientific texts and materials.

*Qualifications of the Author: Michael A. Lo Presti, PE, CSDP, MBA*

Michael Lo Presti has been a Practicing Professional Engineer since 1995 and has completed forensic engineering assignments since 1999. He is President and Managing Principal of Presti & Company, Inc., a full-service mechanical, electrical, and plumbing (MEP) consulting engineering company established in 1997 and primarily focused on mechanical, electrical, plumbing and controls systems design and construction. With 30 years of engineering experience, he is an expert in construction, mechanical and electrical engineering systems (including sustainable energy systems,) product design, and general engineering. He has testified in architecture, engineering, and construction (AEC) breach cases, Construction Defect, complex mechanical HVAC systems, product design and manufacturing defect/liability, and engineering mechanism and general technology-specific to patent infringement.

With a diverse background, Michael Lo Presti has achieved considerable experience in many areas of engineering systems. He has established significant and relevant experience in the following sectors: laboratory work, engineering research, facilities maintenance, product design and patent application, manufacturing engineering, product testing, industrial processes, building thermal modeling, and facilities design and construction. He has worked, both as a direct employee or consultant, for many respected firms including IBM Corporation, Nautilus International, Certified Testing Laboratories, Lockheed Martin Company, Raytheon Company, National Trust for Historic Preservation, National Institutes of Health, US Architect of the Capitol, and the US Supreme Court.



Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Law Offices of Steven T. Auerbach
*Mr. Steven T. Auerbach, Esq.*
21-0364-01 Reynolds v. Willert Mfg
Page -6- of -7-

Mr. Lo Presti has held several roles in the quality assurance and quality control function. He is an IBM qualified six sigma quality expert and a Raytheon Six Sigma Quality Specialist. He understands advanced manufacturing techniques such as pull system workflow, Kanban systems, Just-in-Time production, and plant-floor workflow analysis using the work sampling method.

Mr. Lo Presti was the lead quality control engineer at the Lebanon, PA, Ironwood Power Plant. This electrical utility power plant was the first large-scale combined cycle, natural gas, facility using the Westinghouse 501C turbine engine. In this role, Mr. Lo Presti evaluated site and civil bearing conditions, analyzed mechanical and electrical systems, inspected weld quality, qualified vessel materials, and acted as the on-site technical engineering resource for construction principals. After this effort, his firm played the lead role in the infrastructure evaluation of the underground steam piping systems serving the federally owned buildings on Capitol Hill. His experience also includes oversight and monitoring of biodiesel facilities, chiller plants, steam plants, and dedicated manufacturing process or specialized production plants. He led the design of a flexible manufacturing facility for the Lockheed Martin Company.

Mr. Lo Presti is an experienced fact-finding investigator. He has completed hundreds of technical investigations. He and his Company possess specific capabilities and utilize advanced techniques in data gathering, inspection, evaluation, and analysis. The firm maintains an extensive forensic laboratory with extensive inspection tools and equipment. These include computerized thermal modeling systems, advanced energy analysis, three-dimensional image capture and modeling, two metal hardness testers (one for steel, one for aluminum), extensive destructive and non-destructive testing capabilities including, liquid penetrant testing, magnetic particle testing, ultrasonic weld inspection tools, micrometers, psychrometers, boroscopes, temperature and humidity data loggers, moisture meters, and various quality control tools for product evaluation and on-site construction inspection. Presti & Company also maintains an extensive library of product design standards and construction building codes.

Mr. Lo Presti holds a Bachelor of Science in Mechanical Engineering from Virginia Tech and a Master's Degree from Wake Forest University. He has achieved corporate patent disclosures for technical merit, published technical papers, provided keynote engineering presentations, delivered expert testimony, and wrote various technical reports throughout his career. He holds one US Patent

 **PRESTI**

Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Law Offices of Steven T. Auerbach
*Mr. Steven T. Auerbach, Esq.*
21-0364-01 Reynolds v. Willert Mfg
Page -7- of -7-

with twenty-one different invention claims and recently received two additional patents from the USPTO.

He is licensed to practice Professional Engineering in the states of Virginia, Maryland, New York, New Jersey, West Virginia, North Carolina, and the District of Columbia.

*Expert's Right to Revise Report.*
The Author of this report expressly reserves the right to modify, amend, or expand this report if and when additional information becomes available.

Respectfully Submitted,

Michael A. Lo Presti, PE, CSDP
President & Managing Principal

NSPE " NATIONAL SOCIETY OF
PROFESSIONAL ENGINEERS
MEMBER



**PRESTI**
THE POWER OF INFORMATION

Consulting Professional Engineers
Forensic Engineering & Litigation Support
Specialty Inspection & Testing

Licensed Professional Engineers in:
VA, MD, DC, WVA, NY, NJ, PA, & NC

**Presti & Company, Inc.**
45915 Maries Road, Ste 136
Dulles, VA 20166
p. 703.430.4757
www.presti.com

*Curriculum Vitae of*
# Michael A. Lo Presti, PE, CSDP, MBA
Professional Engineer

*Contact Information:*
Michael A. Lo Presti, PE, CSDP
Professional Engineering Expert Witness

Ph: 703.430.4757
Fx: 703.430.1077
email: mike@presti.com
cell phone: 703.430.4757 x1299

**Presti & Company, Inc.**
45915 Maries Road, Suite 136
Dulles VA, 20166



## Summary

Michael A. Lo Presti has held engineering and senior leadership positions in various capacities for twenty-eight years. He has practiced as a Professional Engineer since 1995 and has completed expert and forensic assignments and court testimony since 1999. He is President and Managing Principal of Presti & Company, Inc., a full-service consulting engineering company established in 1997 with pragmatic expertise in the design and construction of mechanical, electrical, plumbing and control systems. With over thirty years of engineering experience, he is an expert in construction, mechanical, electrical, and plumbing engineering systems (including sustainable energy systems,) product design, and general engineering. He has testified in architecture, engineering, and construction (AEC) breach cases, mechanical, electrical, and plumbing facility systems, construction defect, property management/lease disputes, product design, equipment warranty, and manufacturing defect and liability related. He has completed personal injury cases related to engineering failures including, facilities, construction, maintenance, and sports equipment. He has also completed patent infringement cases relating to mechanical and electrical mechanisms and related general engineering technology.

With a diverse background, Michael Lo Presti has achieved considerable experience in mechanical, electrical, plumbing, and controls systems. He is an Adjunct Professor at Virginia Tech teaching courses on Engineering Systems in Historic Structures. He has established significant and relevant experience in the following areas: executive leadership, laboratory work, engineering research, facilities maintenance, product design, and patent application, manufacturing engineering, product testing, industrial processes, building thermal modeling, and facilities design and construction. His list of clients include IBM Corporation, Nautilus International, Hill International, Certified Testing Laboratories, Lockheed Martin Company, Raytheon Company, National Trust for Historic

Preservation, National Institutes of Health, US Architect of the Capitol, US Supreme Court, University of Maryland, and the Federal Reserve Board.

Mr. Lo Presti has held various roles in executive management, engineering design, construction management including commissioning, manufacturing, quality assurance, and quality control. He is an IBM qualified six sigma quality expert and a Raytheon Six Sigma Quality Specialist. He understands advanced manufacturing techniques, pull systems, Kanban systems, Just-in-Time manufacturing, and production plant-floor workflow analysis.  He understands International design, manufacturing, and statewide and local building construction codes and standards. He is a recognized chilled water systems expert by GSA, UMD, FRB and conducts advanced technical, feasibility and systems operational review and analysis regularly.

Mr. Lo Presti was the lead quality control engineer at the Lebanon, PA, Ironwood Power Plant. This electrical utility power plant was the first large-scale combined cycle, natural gas, facility using the Westinghouse 501C turbine engine. In this role, Mr. Lo Presti evaluated the site and civil bearing conditions, analyzed mechanical and electrical systems, inspected weld quality, qualified vessel materials, and acted as the on-site technical engineering resource for construction principals. After this effort, his firm played the lead role in the infrastructure evaluation of the underground steam piping systems serving the federally owned buildings on Capitol Hill. His experience also includes oversight and monitoring of biodiesel facilities, chiller plants, steam plants, and dedicated manufacturing process or specialized production plants. He led the design of a flexible manufacturing facility for Lockheed Martin Company and the major site consolidation for Raytheon Company.  He has conducted special chilled water studies for GSA and has completed complex MEP systems commissioning for UMD.  He has conducted several detailed reviews and technical analysis for historic building renovation for the Federal Reserve Board and has completed numerous complex construction and manufacturing projects for IBM Corporation. Mr. Lo Presti has personally sealed over 500 engineering projects as the professional engineer of record.

Mr. Lo Presti is an experienced fact-finding investigator. He has completed hundreds of technical investigations. He and his company possess specific capabilities and utilize advanced techniques in data gathering, inspection, evaluation, and analysis. The firm maintains an extensive list of computer, laboratory, and investigation resources. Additional facility resources include: computerized thermal modeling systems; advanced energy analysis; three-dimensional image capture and modeling; two metal hardness testers (one for steel, one for Aluminum); extensive destructive and non-destructive testing capabilities including, liquid penetrant testing, magnetic particle testing, ultrasonic weld inspection tools; micrometers; psychrometers; boroscopes; temperature and humidity data loggers; moisture meters; and various quality control tools for product evaluation and on-site construction inspection. Presti & Company also maintains an extensive library of product design standards and construction building codes going back to 1974 and ASHRAE Standards back to 1959.

Mr. Lo Presti holds a Bachelor of Science in Mechanical Engineering from Virginia Tech and an MBA from Wake Forest University. He has achieved corporate patent disclosures for technical merit, published technical papers, provided keynote engineering presentations, delivered expert

testimony, and wrote various technical reports throughout his career.  He holds a US Patent with 21 novel invention claims.

He is licensed to practice Professional Engineering in the states of Virginia, Maryland, Pennsylvania, New York, New Jersey, West Virginia, North Carolina and the District of Columbia.

## Education

| | |
|---|---|
| Licensed Professional Engineer, PE. | VA, MD, NY, NJ, PA, WVA, NC, & DC. |
| 2016 Adjunct Professor, Virginia Tech. | Falls Church, VA |
| 2012 Raytheon Company, Six-Sigma Quality Specialist | Dulles, VA |
| 2007 Certified Sustainable Design Professional, Association of Energy Engineers | Wash, DC |
| 1997 Center for Creative Leadership | Greensboro, NC |
| 1997 WAKE FOREST UNIVERSITY | Winston-Salem, NC |

>Executive Masters of Business Administration, MBA
>
>Focus in strategy management, organization evaluation, and manufacturing and productions operations analysis.  Statistics Teacher.

| | |
|---|---|
| 1991 Six Sigma Quality Training. | IBM Corporation, RTP, NC & San Jose, CA |

>Led IBM groups in Process Improvement and quality TQM participation. Achieved site recognition for cycle time reduction and process simplification.

| | |
|---|---|
| 1989 VIRGINIA TECH | Blacksburg, VA |

>Bachelor of Science, Mechanical Engineering.
>
>Federal Student Fellowship Program. Cooperative Education Student. Engineering Design Team Leader and DOE National Award Winner.

Numerous engineering and extensive project planning courses, including CPM and PERT. International travel experience.

## Specialized Technical Training

| 2017 | National Academy of Forensic Engineers, Winter Conference | New Orleans, | LA |
|---|---|---|---|
| 2016 | Adjunct Professor, Virginia Tech. Developed programs and coursework for advanced technical courses including, *Engineered Systems in Historic Structures.* | Falls Church, | VA |
| 2015 | Guest Lecturer, Virginia Engineer's Conference, speaking on HVAC Systems in Historic Structures. Lessons Learned from the US Supreme Court Building, AOC Capitol Power Plant,  President Lincoln's Cottage, St. John's Church Georgetown. | Williamsburg, | VA |
| 2014 | Guest Lecturer, National Preservation Conference speaking on HVAC Systems in Historic Structures. Lessons Learned from the Renovation at President Lincolns Cottage. | Savannah, | GA |
| 2013 | 2014 National Electrical Code with Grounding and Bonding. | Tysons Corner, | VA |

|      |                                                               |                        |     |
|------|---------------------------------------------------------------|------------------------|-----|
|      | Bell & Gossett Chilled Water System Design Seminar.           | Annapolis Junction,    | MD  |
|      | NFPA 70E Arc Flash Safety – Raytheon Company.                 | Dulles,                | VA  |
| 2012 | Asbestos Awareness Training, Raytheon Company.                | State College,         | PA  |
|      | IT Information Security Awareness, Raytheon Company.           | Dulles,                | VA  |
|      | Hazardous Communications, Raytheon Company.                   | Dulles,                | VA  |
| 2011 | Bell & Gossett large pumping system design.                   | Annapolis Junction,    | MD  |
|      | Electrical Safety, NFPA 70E, Raytheon Company.                | Dulles,                | VA  |
| 2010 | Tour and Andersson sophisticated hydronic Analysis.           | Washington,            | DC  |
|      | Guest Lecturer, AIA Presentation on Energy Code Compliance.   | Washington,            | DC  |
| 2009 | Carrier HAP for LEED certification.                           | Chantilly,             | VA  |
|      | Healthcare Facility Design.                                   | Chicago,               | Ill |
| 2008 | New Virginia Building Construction Codes.                     | Fairfax,               | VA  |
|      | Hydronic systems and piping applications.                     | Annapolis Junction,    | MD  |
| 2007 | Asbestos awareness for operations and maintenance.            | Baltimore,             | MD  |
|      | Heat Stress Awareness Training.                               | Washington,            | DC  |
|      | Respirator fit testing, fitted for both full & half mask.     | Fairfax,               | VA  |
|      | Carrier Engineering Conference, Geothermal HP Design.         | Williamsburg,          | VA  |
|      | Integrated Engineering Systems Design.                        | Williamsburg,          | VA  |
|      | Innovative LEED Points.                                       | Williamsburg,          | VA  |
|      | OSHA Confined Space Training.                                 | Baltimore,             | MD  |
|      | Building Construction Codes.                                  | Rochester,             | NY  |
|      | NFPA Fire Alarm Design Interface Seminar.                     | Richmond,              | VA  |
| 2006 | NSPE Annual Conference.                                       | Boston,                | MA  |
|      | 2006 International Plumbing Code Seminar.                      | Fairfax,               | VA  |
|      | Carrier Engineering Conference.                               | Williamsburg,          | VA  |
| 2005 | Building Construction in Maryland.                            | Washington,            | DC  |
|      | National Electrical Code 2005 edition.                        | Arlington,             | VA  |
|      | Advanced Commercial Kitchen Ventilation.                      | Leesburg,              | VA  |
|      | Carrier Engineering Conference.                               | Williamsburg,          | VA  |
| 2004 | Computational Fluid Dynamics Modeling for Buildings.          | Alexandria,            | VA  |
|      | HVAC equipment, Lennox Industries.                            | Stuttgart,             | AR  |
|      | Carrier Engineering Conference.                               | Williamsburg,          | VA  |

Other:    Visual Weld Inspection
        Non-destructive Inspection, Ultrasonic Inspection
        Non-destructive Inspection, Liquid Penetrant Inspection
        Non-destructive Inspection, Magnetic Particle Inspection
        CPM, critical path method & PERT program mgmt and project scheduling

## Professional Licensures & Accreditations

Licensed Professional Engineer:

| | | |
|---|---|---|
| Commonwealth of Virginia | 1995 | 0402-025842 |
| District of Columbia | 2003 | PE900836 |
| State of Maryland | 2003 | 27244 |
| State of West Virginia | 1999 | 14057 |
| State of North Carolina | 1999 | 024752 |
| State of New Jersey | 1999 | 24GE04175900 |
| State of New York | 1998 | 076621-1 |
| Commonwealth of Pennsylvania | 1998 | PE055102E |

Michael Lo Presti has held TSA/DHS, US Congress, and US Park Police Security Clearances. He has held a Top Secret US Security Clearance. Currently holds DOD access badge.

Certified Sustainable Design Professional (CSDP) 2007, Association of Energy Engineers.

Commonwealth of VA – BCOM, Virginia Procedures & Policies for the Procurement of Construction and Professional Services, Certified to complete state projects.

## Professional Experience

**Presti & Company, Inc.**                                                 Dulles, VA
President & Managing Principal                                       1997-Present

Mr. Lo Presti is President and Principal of Presti & Company, Inc. provides professional consulting engineering services.

The firm serves the design and construction industry as a full-service Mechanical, Electrical, and Plumbing (MEP) and Controls (+C) consulting engineering firm where Mr. Lo Presti is responsible for providing comprehensive designs, owner representation, commissioning, and specialized inspection and testing services as needed. Mr. Lo Presti directs the design, project management, and inspection personnel to meet client needs.

A hands-on principal, Mr. Lo Presti actively participates in technical evaluations and field work as necessary and is responsible for all technical operations. He has achieved a high level of technical expertise in engineering design, analysis, energy management, and environmental practices and is an established leader in the engineering field in both design and analysis. He has extensive and practical experience in product design, industrial design, patents, complex engineered systems, facilities design, and construction.

Some highlights of expert work and related technical achievements include:

- Expert Testifying Witness for a Federal Case relating to the failure of the steam deaeration system for a preeminent federal agency which resulted in equiopment sourcing issues, construction delays, rework and necessary repairs relating to major MEP systems overhaul.
- Testifying Expert Witness for Condo Owners Association v. Tenant dispute arising out of failure to accommodate infrastructure pipe replacement because of family medical hardship. Issues include pipe life/fitness-for-service analysis along with asbestos matters — case proceeding.

- Senior Project Executive for the reconstruction of the Dominion Valley Country Clubhouse after major gas line fire with considerable damage. Lead Technical specialist for Client Toll Brothers, Inc. with full responsibility for the rebuild of major category insurance loss. Resolution of insurance claim and reconstruction includes design oversight, construction oversight, temporary facilities, and clarification of insurance settlement matters as the key point person to insurance claims processor.

- Principal Commissioning Engineer and technical advisor for 18,000 sf high-end luxury home for an international client. Reviewed all MEP systems for conformance to design intent and for installation accuracy and operational effectiveness.

- Expert Witness for a personal injury case in the US District Court, Southern District of Florida, Federal Court Case resulting from the catastrophic failure of strength training exercise device. Case settled with favorable terms for Client's Plaintiff.

- Defense Expert Witness in Federal Case of mass residential concrete failure. Case settled, and Client's Defendant was dismissed as a party to the case as the result of investigation and information provided by Mr. Lo Presti in an Expert Role.

- Expert for residential solar reflection defect where residential neighbor developed the property and specific East facing windows reflected solar radiation and melted plaintiffs siding. Provided preliminary expert findings and trial testimony at 3-day jury trial.

- Lead Professional Engineer for the design and oversight of complete replacement of the building and energy management systems controls for the marque Georgetown 7-story residential luxury condominium which includes full chilled water and heating plant and primary/secondary pump systems included related MEP complexities.

- Technical advisor and lead Mechanical, Electrical, and Plumbing (MEP) technical consultant and owner representative peer reviewer for GSA, Social Security Administration Baltimore building renovation. $100M construction, including new MEP and reuse of existing chilled water plant.

- Expert for plaintiff in $5M personal injury case resulting from city water utility installing improperly sized water meter covers. Testified at jury trial resulting in judgment in favor of the plaintiff.

- Investigation and opinion on residential HVAC repairs where major big-box retail affiliate contractor installed undersized replacement HVAC unit. The case remains in resolution with the trial pending.

- MEP and facilities management expert witness consultant in Tenant/Landlord Real Estate dispute. This case was a $3.8M defense and counterclaim for property damage resulting at time of lease termination. Reviewed and inspected building conditions and assisted in a favorable settlement achieved for the client.

- Technical advisor and lead Mechanical, Electrical, and Plumbing (MEP) technical consultant and owner representative peer reviewer for Federal Reserve Board historic building renovation. $200M construction, chilled beam cooling, and advanced chilled water plant.

- Retained Expert Witness for construction remediation. This case involves insurance payments for post-disaster construction, including scope, permitting issues, and quality aspects of repairs.

- Special Projects Lead Commissioning Engineer for the University of Maryland, Edward Saint John's Educational Center. $130 M, 150,000 sf student laboratory, research, and lecture facility.

- Forensic engineering and litigation support, including failure analysis for construction concrete spill and related defects to critical infrastructure telecommunications facility.
- Forensic engineering and litigation support including depositions for personal injury from faulty cane device and injury caused by material failure and resulting cane collapse.
- Forensic engineering and litigation support for a personal injury case involving rapid door closure and de-gloving of plaintiff's hand. Particular specifics, including compliance with building construction and maintenance codes.
- Forensic engineering and litigation support including depositions and five-day trial testimony for AEC design breach litigation relating to an advanced geothermal cooling system, including reviews of design, installation, and operation of the school building.
- Forensic engineering and litigation support for patent infringement of medical transport device.
- Forensic engineering and systems evaluation on various large-scale chilled water cooling systems.
- Full-service engineering design of complex chilled water cooling systems for large and historic churches, several projects.
- Mechanical, electrical, and plumbing systems design for high efficient near-net-zero residences in Washington, DC.
- Project Senior Executive for resolution of large-scale construction failure for Federal TSA client with full restitution to the Tenant at no cost to the building owner. His actions mitigated interruptions to the tenant at this classified and highly secured facility.
- Senior Executive in charge of the construction completion and site consolidation for Raytheon Company's State College campus realignment achieving completion within budget and on schedule.
- Senior Executive to mitigate and resolve asbestos discovery during construction renovation at State College site.
- Directed start-up and implemented full-scale commissioning on large industrial balance-draft, dual-fuel boiler for the Architect of the Capitol.
- Completed significant and influential MEP design work and analysis for the renovation of Capitol Power Plant.
- Completed design, analysis, and review of a second story addition to National Rehabilitation Hospital within the disciplines of mechanical, electrical, plumbing, fire alarm, and fire protection.
- Designed and developed two world-class electronic facility manufacturing plants for Lockheed Martin Company and EIT electronics.
- Provided consultation and advice on building engineering, and strategic facility management to Property Asset Managers of an international pension fund client, 8-year engagement.
- Designed and developed an advanced, and highly efficient, thermal ice storage system to extend existing chiller capacity to provide three times cooling production for Lockheed Martin Corporation, Baltimore, MD.
- Served as a special technical consultant to US Supreme Court on technical engineering matters including building stability during major construction and retrofit.
- Completed MEP Design for hundreds of office and tenant fit-up projects.

- Completed MEP design of hi-tech electronic manufacturing complex including humidity control and wafer/solder fabrication specialized temp controlled areas for an electronic PCB manufacturer.
- Completed MEP Design and overhaul for indoor pool facility for the City of Winchester, VA with six LEED energy-saving initiatives.
- Completed MEP design for the active living senior recreational facility addition.
- Completed numerous three-dimensional pipe designs (including the development of CNC source code) and developed complex weldment assemblies.
- Developed numerous heavy-duty force-generating systems.
- Mathematically simulated force-generating systems to allow rapid mechanism design and synthesis.
- Completed thermal and piping analysis on mission-critical cooling systems.
- Completed numerous retrofit and other mechanism designs-including test systems

Mr. Lo Presti is an experienced Project Manager and Business Executive. He serves as primary Project Director and Project Manager for all Presti projects. He has significant and relevant executive level experience in project and construction management.   Project Management Achievements include:

- Lead Project Executive on TSA- Transportation Security Administration, Department of Homeland Security, major operations center upgrade and building expansion of more than 30,000 sf.
- Managed various MEP/FP as well as defense-related Mechanical Design and Construction projects.
- Skilled in PERT and CPM project planning, including over 25 years' experience with MS Project and other program tracking systems.
- Managed complex mechanical engineering defense research and design projects with budgets of $2 to 5 million.
- Completed vendor qualification visits and resolved top-level supplier problems.
- Supervised numerous technical groups of 10-30 engineering/technical colleagues to budget and schedule.
- Extensive computer and network systems experience, including developing and implementing computerized planning and project management systems.
- Awarded IBM citations for significant technical and business success.

Mr. Lo Presti has proven construction and testing experience in all phases of field construction. He was the lead engineering inspector for the construction of a 720 MW combined cycle, gas turbine power plant using the first Siemens Westinghouse 235MW W501G gas turbine and was a significant contributor to resolving day to day quality problems. Some of other inspection technical achievements include:

- Lead Construction Inspector on the Capitol Power Plant West Expansion, which included installation and weld inspection of all structural systems.
- Leading Construction Inspector for the National Institute of Health's main campus facility, power plant modernization.
- Special technical consultant to US Supreme Court for Construction Inspection.
- Planned and supervised routine and complex civil and mechanical construction inspections and materials testing efforts with special interests in industrial/commercial facilities.

- New building start-up of mechanical/electrical systems.
- Completed significant infrastructure engineering evaluations in mechanical HVAC and piping systems.
- Consulted Long Island Railroad on steel erection and welding problems.
- Resolved complex civil/soils problems and interfaced with PennDOT on road quality issues.
- Managed Non-Destructive Testing (NDT) quality programs: VT, MT, PT, and RT.
- Consulted Siemens-Westinghouse on metals sourcing/quality problems relating to offshore production.
- Resolved large-scale concrete construction problems and structural steel erection and fabrication (welding/heat-treating) problems.
- Well versed in building code compliance including state/township, local, DEP, ICC, NEC, ASHRAE, NFPA, BOCA, ASME, AWS, and ASTM.

Mr. Lo Presti is also responsible for the core business processes that include extensive quality control, including adherence to our design process, our internal engineering manual, and use and upkeep of our technical checklist system.

## Fuel & Tire Saver Systems Company, LLC                               Dulles, VA
Founder and CEO                                                        2016-Present

Mr. Lo Presti is Founder and CEO of the Fuel & Tire Saver Systems Company, LLC. He is the inventor and patent-pending holder of a specialty Mobile Nitrogen Tire Inflation Apparatus used to scientifically inflate pneumatic tires to improve safety, increase vehicle fuel economy, reduce tire wear and decrease maintenance labor costs for fleet vehicles.

Customers include school buses for transportation companies, motor coaches, bus and limo companies, lawn care service companies, and various vocational fleets. The business continues to develop a robust client base and provides tire data analytics providing mathematical insight on tire wear and tire replacement predictive modeling.

The company holds proprietary technology in Nitrogen generation systems, advanced tire pressure measurement, gas concentration analysis, gas sampling, automated industrial processing, tire data analytics, and fuel consumption reduction strategies to save fuel for vehicle fleets.

## Virginia Tech                                                       Falls Church, VA
*Adjunct Professor, Continuing Professional Education*                 2015-2018
Advanced Technical Program Developer and Presenter
- **Engineered Systems in Historic Structures** – 2-day course, 1.4 CEU, 14 PDHs

## Raytheon Company                                                    Dulles, VA
*Mid-Atlantic Regional Manager for Facilities Engineering,*
*Space Planning and* Sustainability                                   2011-2013
Area Manager for the Facilities Engineering, Space Planning, and Sustainability function for the Dulles, VA headquarters operations with 1 million SF of space and multidiscipline services for Information and Intelligence Systems Division. This role includes supervisory and management of Engineering, Space Planning, and Sustainability staffs in support of 800,000 SF main Dulles

Campus, 200,000 SF Industrial Building Complex and approximately 20 smaller sites throughout Mid-Atlantic Region. Total SCIF space more than 100,000 sf.

- **Corporate Real Estate and Facilities Engineering Advisor** – Supported Raytheon Space and Airborne Systems Division, Raytheon Pikewerks-Huntsville Division as a regional leader in facilities planning, engineering, maintenance, and capital improvement project management. I have advised other Raytheon Divisions with capital construction. Recognized resource for problem resolution, technical advice, program management, and construction cost containment. Developed capital improvement budgets, maintenance plans, and local operating budgets.
- **Lead Space Planning Executive** – Negotiated critical space utilization strategies with program executives to meet space and facilities needs and to respond to critical new program needs. Developed site space plan which included management of space utilization and building capacity.
- **Program Manager** – Manager of 10 planning and 30 active engineering projects completed by FESP staff. Established task management systems with a focus on project closure. Resolved technical and staffing issues as presented. Created and managed the regional capital plan more than $8 million and managed programs to closure within budget and schedule.
- **Site Sustainability Executive** – Lead executive on building operations and energy reduction. Developed sustainable site strategy and delivered measured results in a short time with Company. Evaluated and identified more than $150,000 annual energy reduction opportunities at the main campus and worked to implement results.

## Nautilus International, Inc.                                    Independence, VA

**Senior Executive,**                                                      1993-1997

Product Line Manager and senior executive to the President for the mechanical equipment manufacturer with sales volume more than $30 million, held various roles including Product Line Manager, Senior Design Engineer, Manufacturing Engineering Manager, Client Liaison, Marketing, and Interim Sales Director.

Managed and directed site production facilities and industrial processes including design and installation of new systems; including planning, coordinating, and implementing new manufacturing processes. Responsible for facility upgrades and plant/equipment modifications and strategic decision planning. Developed improved manufacturing methods, which resulted in lower production costs, increased margins, and decreased breakeven points. Strategically directed all make/buy decisions. Oversaw and collaborated with outside management consultants on production work sampling and operations evaluation.

**Product Line Manager** and Senior Executive to the President. P/L responsibility for $18 million international product line. Managed overall responsibility for the strategic product plan, including product design and engineering, pricing, and marketing. Managed the Manufacturing Engineering department. As a senior representative of the company, Mr. Lo Presti became external corporate contact to high-profile professional and college sports teams and international organizations.

- Developed, implemented, and maintained the $18M plan for the core business segment.
- Planned, organized, and managed product pricing, cost targets, and margins.
- Directed design concepts, product line concepts, schedules, and budgets for new product line, including identifying line requirements and overseeing engineering and manufacturing efforts to develop functional prototypes.
- Evaluated existing operations and developed new strategies for business improvement.

- Resolved technical and legal concerns relating to equipment litigation.
- Senior Member and Company voting representative to ASTM Equipment Warning and Labeling standards setting sub-committee.

## Manager - Manufacturing Engineering.

- Statistically simulated production discovering 46% additional capacity.
- Generated new CNC processes to reduce cutting time on complex milled parts.
- Resolved weldability issues and modified welding operation to improved material handling.
- Completed plant conversions from wet to powder paint systems.
- Evaluated existing manufacturing operations, including computerized simulation leading to new assembly strategy that increased production efficiency by 160%.
- Directed all make/buy decisions resulting in a 23% cost reduction in manufacturing.
- Implemented cellular manufacturing methods and Kanban pull systems resulting in lowered production costs and increased product margins.

## Senior Design Engineer.

Responsible for entire equipment designs using creative engineering solutions and extensive personal experience to develop new products.  Designed numerous exercise machines. Held managing responsibility to externally funded research through local Universities.  Acted as a technical resource for marketing and sales.

- Planned and managed externally conducted research.
- Invented ABTIR mechanism, internationally patented with 21 novel claims.
- Designed numerous heavy-duty force-generating systems. Including leg presses, inclined presses, bicep curl machines, Tricep extension machines, hip and back systems and various other systems and mechanisms.
- Mathematically simulated force-generating systems to allow rapid device design and synthesis.
- Completed numerous three-dimensional pipe designs (including the development of CNC source code) and developed complex weldment assemblies.
- Completed numerous retrofit and other mechanism designs-including test systems.
- Evaluated force loading systems for design quality and system operation.

## IBM Corporation

Various Positions: Raleigh, NC, Research Triangle Park, NC, Manassas, VA          1985-1993

**Senior Design Engineer/Lead Mechanical Engineer** for the design and development of electronic packaging assemblies with critical environmental requirements for use in Naval, Aircraft, and Space applications. Projects delivered on time and within schedule.

- Developed electronic enclosures for naval, space and aircraft defense applications, including planning, supervision, and completion within budget and schedule the mechanical designs for the Sonar Command Console program for the US Navy; effective management of the $1.5 million projects resulted in IBM Site Award for the design team.
- Managed complex design projects for defense applications with budgets of $2-5M.
- Managed $20M technical relationship with Sanders Corporation for the design and development of specialized, ruggedized display screens.
- Supervised the engineering efforts of 20 direct and subcontract reports.
- Completed technical project with merit awards from US defense agencies.
- Completed technical cooling analysis for plumbing system for heat control of electronic enclosure.
- Completed full-scale tolerance analysis of mechanical systems.

- Site technical resource for Geometric Dimensioning and Tolerancing of mechanical parts.
- Awarded IBM citation for managing major contract within schedule and budget.
- Top rated on the 1992 promotion plan for 350 person IBM Engineering organization.
- IBM Market Driven Quality Award Winner. 1992
- IBM Executive Area award winner, IBM Business Area award winner, 1991.

**Senior Associate Engineer -** Developed structural sub-assemblies for submarines; managed technical vendor relationships; led improved quality efforts for mechanical engineering organization and participated as site representative in IBM Corporate Mechanical Development task force.

**Associate Design Engineer, Facilities Design, and Construction.**                RTP, NC
- Responsible for the operations of eight site buildings.
- Designed specialty HEPA and manufacturing process lines for production.
- Designed and planned HVAC, Plumbing, and Fire Protection construction and repair projects.
- Designed engineering cooling systems for sophisticated computer equipment, data centers, including forced-air and water-cooled systems.
- Planned, designed, and directed construction projects ranging from $100k to $1M.
- Directed and supervised complex maintenance repairs.
- Created and implemented a surplus equipment inventory management system resulting in increased reuse and lowered facility construction and repair costs.
- Achieved 90% plus accuracy on project estimates while completing more than $500,000 a month in trade construction for MEP services.

## D.N. Kisley PE and Associates                                1989 Cary, NC
**MEP Design Engineer**
- Completed MEP design and field work for a registered professional engineering firm.
- Completed building inspections and engineering for municipal/institutional projects.
- Interfaced with architects and customers during the requirements definition phase.

## Litton Industries' Poly-Scientific                        1988 Blacksburg, VA
**Mechanical Engineering Consultant.**
- Completed mechanical design analysis for production and fabrication acceptability and formal tolerance evaluation of night vision naval system used for aircraft guidance.
- Completed technical analysis of defense radar module.
- Completed detailed manufacturing tolerance analysis using RMS tolerancing.

## IBM Corporation                                1985-1988 Manassas, VA & RTP, NC
**Manufacturing Engineer/Maintenance Engineer**
- Extensive maintenance engineering and manufacturing engineering in both Raleigh, NC and Manassas, VA.
- Operated Central Utility Plant at multi-building IBM computer complex.
- Completed HVAC start-up controls analysis and preventive maintenance.
- Resolved complex vibration and air control problems.
- Resolved manufacturing assembly problems for naval equipment fabrication.

**Defense Mechanical Development Design Engineer**
- Designed subassemblies for submarine mechanical components.
- Wrote a technical specification for Navy's Common Enclosure for Electronic Equipment.

## United States Geological Survey-USGS    1983- 1985 Reston, Virginia
**Land Surveyor**
- Surveyed Chesapeake watershed and collected, analyzed, and reported soil test results for the Mid-Atlantic US Geological Survey, Acid Rain program.
- Developed computer programs to reduce survey and geotechnical data process time by 60%.

## Patents & Invention Disclosures

2019    Fuel & Tire Saver Systems Company, LLC.  Additional patents under development.

2017    Fuel & Tire Saver Systems Company, LLC.  Patent: "Tire Pressure Maintenance Apparatus and Method." Filed with USTPO.

2016    Patent Pending application, Fuel Saver Systems.

1996    Inventor and Patent Holder of US Patent 7,083,554 B1, *Exercise Device with Automatic Belt Tensioning Unit and Infinite Position Range Limiter.*

1992    Inventor and Author, Patent Disclosures: IBM Technical Disclosure Bulletin. *Single Side Inlet/Outlet, Parallel Flow High Capacity Electronic Card Cooling Coldplate.*

1992    Inventor and Author, Patent Disclosures: IBM Technical Disclosure Bulletin. *Militarized Drawer for Conduction-Cooled Electronic VME Modules.*

## Technical Publications & Presentations

2015    *HVAC Systems for Historic Structures: Lessons Learned and New Solutions.* Michael Lo Presti, PE, CSDP. 2015 Virginia Engineers Conference, Williamsburg, VA.

2014    *HVAC Systems in Historic Structures: Lessons Learned and New Solutions.* Jeff Larry and Michael Lo Presti, PE, CSDP. Guest Lecturer at National Trust for Historic Preservation Annual Conference, National Preservation Conference, Savannah, GA.

2013    *Recognized benefits of 3-D Image Scanning and MEP Model Development for Improved As-built Verification of Vertical Structures and Complex MEP Systems Leading to Effective Contractor Management.* A White Paper. By: Michael A.  Lo Presti, PE, CSDP ©2013 Presti & Company, Inc.

2013    *Using Continuously Monitored Space Temperature and Humidity Measurements of Critical Artifact Spaces To Develop Closed Loop Statistical Process Control Algorithms to Provide Advanced Control of In-situ Base Building HVAC Systems and Achieve High Performance Critical Space Conditions. A White Paper.* By: Michael A. Lo Presti, PE, CSDP & Staff, ©2013 Presti & Company, Inc.

2013    *3-D Image Scanning for Improved As-built Verification of Historic Vertical Structures Leading to Highly Accurate As-built Information Modeling for the Commonwealth Owner.* A White Paper. by: Michael A. Lo Presti, PE, CSDP, ©2013 Presti & Company, Inc.

2010    *Ashburn "Microgrid" Energy Technology Demonstration.* George Washington University Science and Technology Campus, Ashburn, VA.

2009    ASHRAE Keynote presentation. *The International Energy Conservation Code, other Codes and Policy, and the impact of the Practicing Consulting Engineer.* Copyright 2009, Presti & Company, Inc.

*Electronic Module Inspection and Testing Report of Findings.* Prepared for Frontier Insurance Adjusters, Mr. Syed Hassan, Baltimore MD 2009

2008    Facility Decisions 2008 conference, Las Vegas NV. *Lockout/Tagout, What Facility Executives Need To Know!* Copyright 2008 Presti & Company, Inc.

*Lafayette Building Façade Inspection,* for Hill International, Inc. and GSA, Washington DC. 2008

*Report on the Recognized Industrial Pipeline Maintenance Codes and the Impact of Code Requirements on Effective Integrity Management of the Capitol Utility Pipeline Systems.* The Architect of the Capitol, Director of Capitol Power Plant Operations, RMF Engineering, Washington, DC 2008.

*Capitol Tunnel Inspection Program Quick-Look Study, Pipe Wall Evaluation & Data Submittal Package.* The Architect of the Capitol, Director of Capitol Power Plant Operations, RMF Engineering, Washington, DC 2008.

2003    *Pipe Supports Weld Inspection Report,* National Institutes of Health, Hill International, Bethesda MD 2003.

1996    *A Statistical Analysis of Nautilus Manufacturing Line,* Independence, VA.

1995    *Closed-Form Synthesis of Force-Generating Planar Four-Bar Linkages. Co-author,* ASME National Mechanisms and Design Conference.

## Business Publications

1997    Author, *CAPS Business Strategy.* Cashflow, Asset activation, Product development, and Strategic Relationships. Developed in conjunction with special management assignment. Independence, Virginia

1996    Author, *A Strategic Analysis of Nautilus International, Inc.,* A Division of Delta Woodside Industries. Independence, Virginia

## Significant Project Awards and Achievements

### 2015 CMAA Project Achievement Award
- Presti & Company, Inc. as sub-consultant to Hill International, Inc.
- GSA, Lafayette Building, Washington, DC.
- GSA, American Recovery & Reinvestment Act project.
- LEED Gold, High Performance "Green" Building Systems.
- Phased Construction around Major Building Tenants.
- 13-story, 565,000 sf, Class A Office Space.
- Preserved significant historical features- Bldg listed on National Register of Historic Places.

### 2007 Construction Management Project Achievement Award
- Presti & Company, Inc. as sub-consultant to Hill International, Inc.
- US Capitol West Refrigeration Plant Expansion, Washington DC.
- Architect of the Capitol, 1918 heating/cooling facility, located four blocks from US Capitol.

- Full Sprinkler and climate controlled systems on four levels.
- Three, 6,000 Ton Centrifugal Chillers, 42" diameter distribution piping.
- Distributed Control Systems (DCS) with more than 2,000 system control points.
- Sustainable, thermal cooling heat exchangers.
- 400W emergency generator supporting fire alarm, elevator, and egress lighting.

## Professional Memberships

National Society of Professional Engineers, 24 years
Virginia Society of Professional Engineers, 24 years
American Society of Mechanical Engineers, 34 years
American Society of Heating Refrigeration and Air Conditioning Engineers, 19 years
Association of Energy Engineers
American Society of Testing and Materials
American Welding Society
Society of Automotive Engineers
Former Member, Rotary Club of Sterling, Past President, Paul Harris Fellow
Former Commissioner, Loudoun County Economic Development Advisory Commission, 2015
Chairperson, Loudoun County School-Business Partnership, Executive Council, 2014-2018
Member, Loudoun County School-Business Partnership Executive Council 2018-present
Board Member, Virginia Society of Professional Engineers, 2018-present

## Office address:

Presti & Company, Inc.
45915 Maries Road, Suite 136
Dulles VA, 20166

Phone: (703) 430-4757

Fax: (703) 430-1077


Email: mike@presti.com

Websites:  www.michaelloprestipe.com
                www.presti.com

MAL CV  04302019