IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW REYNOLDS,<br>Plaintiff;<br><br>vs.<br><br>WILLERT MFG. CO., LLC,<br>Defendant. | CIVIL ACTION<br><br>No.: 5:21-cv-01208<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S COUNTER STATEMENT OF FACTS IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to this Court's Policies and Procedures, Plaintiff Matthew Reynolds hereby submits the following Counter Statement of Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. 29-1)[1]:

**a. Willert's Operation**

1. Willert produces consumer packaged goods characterized as "disposable things to clean your home with." Bonsky p. 25:10-14, attached hereto as Exhibit 12.

2. Plaintiff testified that Willert's products are "99% water" and "ultimately, these were like consumer household chemicals. So, stuff that you can buy at the Dollar Tree or wherever . . . you don't want to drink [the products]. But, other than that, the risk factor is pretty low." Reynolds pp. 156:10-11; 196:8-15[2], attached hereto as Exhibit C.

3. Willert has approximately 250 employees with three (3) United States facilities: one in Pennsylvania, one in West Virginia, and one in Missouri. Gillette p. 15:1-3; p.37:9-13, attached hereto as Exhibit 13.

---

[1] Unless otherwise noted, all lettered exhibit references are to the exhibits attached to Defendant's Statement of Undisputed Material Facts ("DSUMF") (ECF No. 29-2) and all numbered exhibit references are to the exhibits attached to Plaintiff's Statement of Undisputed Material Facts ("PSUMF") (ECF No. 27-2) or to the instant Counterstatement of of Facts.

[2] Pagination listed as it appears on ECF.

4.  All three of these facilities (100% of its US operation) operate in states with medical marijuana laws. Exhibit 13, p. 38:17-20.

5.  Of the 250 current employees, Willert does not employ a single known medical marijuana patient. Exhibit 13, p. 29:9-12.

6.  Willert acquired it's Pennsylvania facility in 2019 and is the facility in which Plaintiff worked as a maintenance manager from October 16, 2020 through November 5, 2020 under Mr. Jack Bonsky. Exhibit 13, p. 43:12-14; PSUMF ¶¶ 6-7, 25.

7.  This facility is located in Douglassville, Pennsylvania and does "liquid fill[3]" and makes air fresheners. Exhibit 12, pp. 25-28:10-15.

8.  The chemicals involved in this process **do not** require permits. Exhibit 12, 83:8-11 (emphasis added).

   1. **Plant Safety**

9.  Since Mr. Bonsky assumed a management position with Willert, there have been no OSHA recordable injuries. Exhibit 12, pp. 57-58:21-2.

10. Since Mr. Bonsky assumed a management position with Willert, there have been no Workers' Compensation claims made against Willert. Exhibit 12, p. 58:3-5.

11. In this calendar year (2021), there have been no production man hours lost due to work injuries. Exhibit 12, pp. 58-59:22-1.

   b. **Willert's Deliberate Indifference to Medical Marijuana Patients**

12. Willert's human resource manager is Ms. Tammy Gillette for whom the "buck stops [with her] in terms of Willert's compliance with all antidiscrimination laws." Exhibit 13, p. 7:12-13; p.16:10-15.

---

[3]  A process that involves putting liquid in a bottle, capping the bottle, and placing a label on the bottle for sale. Exhibit 12, pp. 25-26:23-6.

13.     Under Ms. Gillette, Willert has maintained a pre-hire, zero-tolerance drug policy. Exhibit 13, p. 42:7-9.

14.     Ms. Gillette and Willert have not updated this policy despite Pennsylvania having legalized marijuana for medical purposes. Exhibit 13, p. 43:5-8.

15.     Ms. Gillette knew that Willert's medical marijuana drug policy needed to be updated in 2019-- more than one year prior to Plaintiff's termination. Exhibit 13, pp. 46-47:21-6.

16.     Ms. Gillette prioritized COVID crisis management over the "major goal" of updating its medical marijuana policy. Exhibit 13, pp. 43-45:15-2.

17.     Currently, Willert does not have any policies to ensure equal employment opportunities for medical marijuana patients. Exhibit 12, p. 61:9-15; Exhibit 13, p. 38:21-24.

**1. Willert's Non-Existent Training and Supervision of Plaintiff's Supervisor**

18.     Plaintiff's supervisor, Mr. Bonsky, was not given any anti-harassment or equal employment opportunity training or classes. Exhibit 12, pp. 51-52:19-3.

19.     More specifically, Ms. Gillette did not give Mr. Bonsky any training on medical marijuana patient discrimination. Exhibit 13, p. 37:2-7.

20.     Ms. Gillette's efforts to ensure that Mr. Bonsky doesn't discriminate against his employees is limited to "informal conversations." Exhibit 13, pp. 24-25:1-4.

21.     Prior to October 2020, Ms. Gillette did not discuss the PMMA or medical marijuana patient discrimination with Mr. Bonsky. Exhibit 13, p. 36:6-21.

22.     To date, Ms. Gillette has not read or reviewed any plant practices or procedures designed to ensure that Mr. Bonsky doesn't discriminate against his employees. Exhibit 13, p. 25:6-10.

### c. Defendant Does Not Dispute that Plaintiff Was a Medical Marijuana Patient

23. At all times relevant to this action, Plaintiff was a medical marijana patient. Affidavit of Matthew Reynolds ¶ 21, attached hereto as Exhibit 3.

24. At all times relevant to this action, Plaintiff suffered from severe anxiety disorder; has met the requirements for medical marijuana certification; and is a resident of Pennsylvania. Exhibit 3 ¶ 21.

25. On June 27, 2020, Plaintiff received the following notice from the Pennsylvania Office of Medical Marijuana (the "OMM"), "Your patient certification has been issued by your practitioner." Thereafter, the OMM sent Plaintiff a Medical Marijuana Patient Identification Card with an issuance date of July 7, 2020 and an expiration date of July 6, 2021. True and correct copies of this correspondence and Patient Identification Card are attached hereto as Exhibits 4 and 5.

26. At all times relevant hereto, Plaintiff used his valid and unexpired Patient Identification Card to purchase medical marijuana exclusively from Pennsylvania medical marijuana dispensaries. Exhibit 3 ¶¶ 22-23.

27. At all times relevant to this action, Plaintiff kept his marijuana in the original package in which it was dispensed, maintained his Patient Identification Card on his person when he consumed marijuana, and did not "smoke" marijuana- instead, he consumed it in a manner consistent with the PMMA. Request for Admission ¶¶ 30-31, attached hereto as Exhibit 2; Exhibit 3 ¶¶ 25-27.

     **d.**     **Plaintiff's Employment with Defendant**

28. On October 15, 2020, Plaintiff was offered employment with Defendant as an overtime-exempt Maintenance Manager. Plaintiff's Offer of Employment Letter, attached hereto as Exhibit 6.

29. Plaintiff worked in this role for the Defendant from October 16, 2020 through November 5, 2020. Exhibit 2 ¶ 1; Exhibit 3 ¶ 4.

30. At no point between October 16, 2020 through November 5, 2020 was Plaintiff placed on a performance improvement plan. And, Defendant is without evidence that, during this period, it gave Plaintiff negative performance reviews or evaluations, reprimands, or coachings to remediate performance deficiencies. Exhibit 2 ¶ 6; Exhibit 3 ¶¶ 5-9.

     **e.**     **Plaintiff's Medical Marijuana Usage**

31. At no point did Plaintiff consume medical marijuana during working hours and Defendant is without evidence that Plaintiff consumed medical marijuana within eight (8) hours of the start of a shift. Exhibit 2 ¶¶ 19, 22-24; Exhibit 3 ¶¶ 24, 29.

> Q. Did you ever see Mr. Reynolds use marijuana at work?
> A. No.
> Q. Did you ever see Mr. Reynolds appear intoxicated at work?
> A. No.

Exhibit 12, pp. 75-76:21-2.

     **f.**     **The Drug Screen and Initial Disclosure of Protected Status**

32. At hire, Plaintiff was informed that he would be subjected to a mandatory pre-employment drug screen. Plaintiff's Offer Letter, attached hereto as Exhibit 6.

33. Willert scheduled Plaintiff's drug screen for October 28, 2020 at Occupational Health Pottstown Hospital. Exhibit C, pp. 145-149:20-13.

34. Prior to taking the drug test on this date, Plaintiff told the attendant that he was a medical marijuana patient and presented his Patient Identification Card and asked, "Do you guys need to know this?" Exhibit C, p. 213:13-18.

35. The attendant told Plaintiff that this wouldn't be a problem and that she would give him a call if there were any questions. Exhibit C, p. 213:21-23.

36. During this drug screen, Plaintiff was tested for a THC metabolite and not for active THC. Consequently, Defendant is without evidence that Plaintiff had a blood content of more than 10 nanograms of **active** THC per milliliter of blood in serum on October 28, 2020 as opposed to a mere metabolite. Toxicology Expert Report, attached hereto as Exhibit 10.

37. After taking the test, and on November 3, 2020, Plaintiff then received a call from a medical review officer asking for a comment as to why Plaintiff had tested positive for THC. Plaintiff again stated that he was a medical marijuana patient. Exhibit C, pp. 210-211:9-21.

38. Until this point, Plaintiff had assumed that with a valid prescription comes some modicum of privacy such that the medical review officer would report a "pass." Exhibit C, p. 207:13-21.

39. This assumption was also shared by Ms. Gillette who stated, "if there is a legal reason for a person to take a medication, the [drug screen would reveal] a negative." Exhibit 13, Dep. p. 57:12-23.

40. The medical review officer reported his findings as "D-THC-Marijuana Metabolite 50/15- positive," but did not reference Plaintiff's two disclosures of his protected status. Drug Screen Letter, attached hereto as Exhibit 9.

41. The results of the drug screen (Willert0046) were relayed to Willert on or after November 3, 2020 and are the Defendant's sole source of knowledge that Plaintiff had any amount of THC in his system. Exhibit 8.

42. Willert then formulated an initial determination to terminate Plaintiff's employment without inquiring as to why THC was present on the drug screen. Exhibit 13, p. 53:3-9.

### g. Willert's Initial Termination Decision, Plaintiff's Direct Disclosure, and Willert's Final choice to Terminate Plaintiff

43. On November 5, 2020, Plaintiff was informed by his supervisor, Jack Bonsky, that he was being fired because of the presence of marijuana in his system. The contents of the Termination Letter (Willert0008) were read to him. Exhibit 2 ¶¶ 8, 33-34; Exhibit 3 ¶ 32; Exhibit 8.

44. Plaintiff then told Mr. Bonsky that he was a medical marijuana patient and asked that Willert reconsider this decision. Exhibit 2 ¶¶ 35-36; Exhibit 3 ¶ 33. Exhibit 12, p. 79:20.

45. Critically, Mr. Bonsky then called Ms. Gillette to see whether Plaintiff status as a medical marijuana patient "could somehow change something." Exhibit 12, p. 80:13-18.

46. Ms. Gillette told Mr. Bonsky that this "doesn't make any difference." Exhibit 12, p. 80:1-2.

47. Whereupon Mr. Bonsky left a voicemail on Plaintiff's phone indicating the finality of the termination decision. Exhibit 12, p. 80:2-5.

48. There was nothing preventing Willert from having revoked the above initial termination decision. Exhibit 13, p. 60:12-17.

49. Plaintiff was terminated because he availed himself of the benefits conferred to him by the PMMA.

> Q. If Mr. Reynolds hadn't failed his drug test, would he have been fired on November 5th?
> A. No.

> ...
> Q. Is it fair to say he was fired because [he didn't pass] the drug test?
> A. Yes.

Exhibit 12, pp.83-84:8-6.

50. The Termination Letter does not reference any alleged performance deficiencies. Exhibit 8.

51. Defendant does not alledge (and the Termination Letter does not state) that that Plaintiff manufactured, dispensed, possessed, purchased, or sold a controlled substance on Defendant's premises. Exhibit 2 ¶¶ 16-18, 20-21; Exhibit 8.

52. Consequently, Plaintiff was without employment from November 5, 2020 until the last week of June 2021. Exhibit 3 ¶ 34.

                              **LAW OFFICE OF STEVEN T. AUERBACH**

By:    */s/ Steven T. Auerbach*
          Steven T. Auerbach, Esq.
          822 Montgomery Ave.
          Suite 210
          Narberth, PA 19072
          (215) 964-4410
          Auerbach.Steven@gmail.com

          *Attorney for Plaintiff*

Dated: September 27, 2021