## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW REYNOLDS | : |
| | : |
| Plaintiff, | : Civil Action No. 5:21-cv-01208-JFL |
| | : |
| v. | : |
| | : |
| WILLERT MFG. CO., LLC | : |
| | : |
| Defendant. | : |

## DEFENDANT WILLERT MANUFACTURING COMPANY, LLC'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The inflammatory language littered throughout Plaintiff's Opposition to Willert's Motion for Summary Judgment is no more than a "smoke screen" for Plaintiff's inability to identify any questions of material fact that should preclude summary judgment in favor of Willert. Defendant Willert Manufacturing Company ("Willert") files this Reply in further support of its Motion for Summary Judgment because Plaintiff's Opposition only underscores the fact that Willert did not have any knowledge – actual or imputed - of Plaintiff's status as a medical marijuana user before it terminated him and Plaintiff is not entitled to punitive damages under the Pennsylvania Medical Marijuana Act (the "MMA") or the facts at issue here.

### A. Willert Did Not Have Actual or Imputed Knowledge of Plaintiff's Status as a Medical Marijuana User Before It Terminated Him.

Plaintiff does not dispute that no one from Willert had actual knowledge of his status as a medical marijuana user before it terminated him. Instead, he argues that because the facility that performed Plaintiff's pre-employment drug screen may have been told by Plaintiff that he was a medical marijuana patient, their alleged knowledge should be imputed to Willert. This argument, however, is both legally and factually unsupported.

At the outset, Plaintiff bears the burden of establishing an agency relationship between Willert and Pottstown Hospital.  See Walton v. Johnson, 66 A.3d 782, 786 (Pa. Super. Ct. 2013) (quoting B&L Asphalt Industries, Inc. v. Fusco, 753 A.2d 264, 269 (Pa. Super. Ct. 2000)); Goodway Marketing, Inc. v. Faulkner Advertising Associates, Inc., 545 F. Supp. 263, 267 (E.D. Pa. 1982) (citations omitted) ("The burden of establishing the existence of an agency relationship rests on the party making the assertion.")  Plaintiff falls far short of meeting that burden here.

Under Pennsylvania law, "'the basic elements of agency are 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'"  Goodway Marketing, 545 F. Supp. at 266-267 (citations omitted).  See also, DeSimone v. U.S. Claims Services, Inc., No. 19-6150, 2020 WL 2556949, at *3 (E.D. Pa. May 5, 2020) (concluding that plaintiff failed to adequately allege an agency relationship by failing to plead facts indicating that the alleged principal was "in control of the undertaking").  "It is not necessary that the parties explicitly state their intention to create an agency relationship, but their intention must be clear from their conduct."  Id. at 267 (citations omitted).  "Thus, the agent must act primarily for the benefit of the principal, subject to the principal's control."  Id.

"An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel."  Walton, 66 A.3d at 786 (citation omitted).  The Superior Court of Pennsylvania explained that

> Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. . . . Implied authority exists in situations where the agent's actions are 'proper, usual and necessary' to carry out express agency. . . .Apparent authority exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. . . . Authority by estoppel occurs when the principal fails to take

>reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

Walton, 66 A.3d at 786 (citations omitted).

Where the facts regarding agency are not in dispute, the question of agency may be resolved on a motion for summary judgment. De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP, 792 F. Supp. 2d 812, 839 (E.D. Pa. 2011). Such is the case here.

Plaintiff fails to identify any facts to support the existence of an agency relationship between Willert and Pottstown Hospital. Without any citation to the record, Plaintiff argues that "Willert retained Pottstown Hospital to test Plaintiff for illegal drug use, to confirm his results, and to report its findings in such a way that would not lead to an erroneous perception of the illegal use of drugs." See Pl.'s Opp'n Br. at p. 9. Plaintiff points to no facts or documents that explain how Pottstown Hospital came to perform the drug screen at issue, the terms of any alleged relationship between Willert and Pottstown Hospital, or that indicate that Willert exerted control over Pottstown Hospital. The sole fact upon which Plaintiff seems to rely to support its agency argument is that Pottstown Hospital performed the drug screen at issue. However, that, alone, is insufficient to establish an agency relationship. See Walton, 66 A.3d at 787 (citing B&L Asphalt Industries, 753 A.2d at 269 (observing that "we do not assume agency by a mere showing that one person does an act for another")).

Further, none of the cases cited by Plaintiff in his opposition are on point or stand for the proposition that any alleged knowledge on the part of Pottstown Hospital should be imputed to Willert. Indeed, Plaintiff's reliance on Warshaw v. Concentra Health Services, et al., 719 F.Supp.2d 484, 506 (E.D. Pa. 2010), seems more supportive of the argument that no agency relationship existed between Willert and Pottstown Hospital. In Warshaw, the Court concluded that a company tasked with performing drug tests owed a duty of care to the plaintiff with regard

to the processing and reporting of his drug test results. Warshaw, 719 F.Supp.2d at 506. The plaintiff's employer was also a defendant in that case. Id. Not only was there no discussion of an alleged relationship between the employer and drug testing company, but the finding of a separate duty on the part of the drug testing company cuts against an argument that there would be an agency relationship between an employer and drug testing company under facts such as those at issue here.

In making his agency argument, Plaintiff essentially asks this Court to make a logical leap and ignore the critical threshold question of whether an agency relationship exists between Willert and Pottstown Hospital. As the record is devoid of any facts regarding the alleged relationship between Willert and Pottstown Hospital, Plaintiff cannot satisfy his burden and no alleged knowledge on the part of Pottstown Hospital as to Plaintiff's status as a medical marijuana user can be imputed to Willert. In short, the record is abundantly clear that Willert had no knowledge of Plaintiff's status as a medical marijuana user before it terminated him and Willert is entitled to summary judgment.[1]

### B. Plaintiff is Not Entitled to Punitive Damages Under the MMA or Under the Facts at Issue Here.

Plaintiff's argument that he is entitled to punitive damages under the MMA is also both factually and legally unsupported.

Plaintiff's reliance on Laidacker v. Berwick Offray, LLC, No. 726 of 2019, 2020 WL 3410881, at *1 (Pa.Com.Pl. Jan. 2, 2020), a case arising out of the Court of Common Pleas of

---

[1] Without any citation to the record, Plaintiff also seems to argue that the termination decision may not have been final when Willert first communicated it to Plaintiff. That argument, however, is contradicted by the record in this case, which indicates just the opposite. See Def.'s Counter-Statement. As a result, to the extent that this is a separate, albeit unsupported, argument by Plaintiff, it should be rejected.

Columbia County, to support its argument is misplaced. Laidacker does not stand for the proposition that punitive damages are recoverable under the MMA. See Laidacker, 220 WL 3410881, at *1. Notably, in addition to asserting an MMA claim, the plaintiff in Laidacker also asserted a wrongful discharge claim. See id. When determining whether the plaintiff stated a cause of action for punitive damages, the Court noted that Plaintiff sought punitive damages in both counts of the complaint. See id. at *8. The Court explained that "[r]egarding punitive damages, the issue is whether Defendant's alleged failure to hire due to a positive test for marijuana, amounts to willful and malicious conduct when they communicated that they do not recognize the statutory protections under the PMMA." Id. The Court ultimately concluded that "[s]uch flaunting of those statutory provisions may give rise to punitive damages" and denied Defendant's preliminary objection to punitive damages without prejudice. Id. at *8-9. In doing so, however, it is unclear whether the Court reached its decision because it believed that the plaintiff sufficiently stated a claim for punitive damages under the MMA or that punitive damages were potentially recoverable for the plaintiff's separate wrongful discharge claim. See id. at *8-9.

Perhaps even more significantly, Plaintiff ignores the fact that *after* Laidacker, the Superior Court of Pennsylvania explained in Palmiter v. Commonwealth Health Sys., Inc., No. 498 MDA 2020, 2021 WL 3507795, *4, that "[a]s the Supreme Court in Gass v. 52nd Judicial Dist., --- Pa.---, ---, 232 A.3d 706, n.6 (2020) characterized the MMA as remedial in nature, it should be accorded a liberal construction." Palmiter, 2021 WL 3507795, at *4. Any attempt by Plaintiff to argue that the MMA is not a remedial statute because it lacks a "make-whole measure" (see Pl.'s Opp. at p. 11), therefore, stands in clear contradiction of Pennsylvania appellate court decisions that followed Laidacker, and should be rejected.

Further, even if the MMA allowed Plaintiff to recover for punitive damages (which it does not), Plaintiff points to no facts of record to suggest that a fact-finder could conclude that punitive damages should be awarded here. The ***only*** fact to which Plaintiff points in attempted support of its punitive damages argument is that Willert did not update its anti-discrimination polices to specify anti-discrimination against medical marijuana users in the year between its acquisition of the Douglassville location until Plaintiff worked there. This, alone, is insufficient to warrant punitive damages.

Plaintiff cites to only one case, Kolstad v. Am Dental Assoc., 572 U.S. 526, 119 S. Ct. 2118, 144 L.2d 494 (1999), to support the argument that the facts at issue here give rise to punitive damages. In Kolstad, the Supreme Court of the United States notes that "[w]here an employer has undertaken such good faith efforts at Title VII compliance, it 'demonstrat[es] that it never acted in reckless disregard of federally protected rights.'" Kolstad, 527 U.S. at 544, 119 S.Ct. at 2129, 144 L.Ed. 494 (citations omitted). In doing so, it cites to Harris v. L&L Wings, Inc., 132 F.3d 978, 984 (4th Cir. 1997), which it notes observed that "[i]n some cases, the existence of a written policy instituted in good faith has operated as a total bar to employer liability for punitive damages" and concluded that "the institution of a written sexual harassment policy goes a long way towards dispelling any claim about the employer's 'reckless' or 'malicious' state of mind." Id. Neither Kolstad nor Harris stand for the proposition that the lack of update of a written policy constitutes egregious conduct warranting punitive damages and Plaintiff fails to cite to any case that does.

Notably, Plaintiff's comparison of this case to Title VII also falls flat as there is a significant distinguishing factor between Title VII and the MMA on the issue of punitive damages. Unlike the MMA, statutory language provides for the recovery of punitive damages in certain Title VII cases. See Kolstad, 527 U.S. at 533-34, 119 S.Ct. 2118 at 2123-24, 144 L.Ed.2d 494. The

Kolstad Court explained that "[p]rior to 1991, only equitable relief, primarily backpay, was available to prevailing Title VII plaintiffs; the statute provided no authority for an award of punitive or compensatory damages." Id. (citing Landgraf v. USI Film Products, 511 U.S. 244, 252-254, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). However, '[w]ith the passage of the 1991 Act, Congress provided for additional remedies, including punitive damages, for certain classes of Title VII and ADA violations." Id. Section 1981a(b)(1) specifically states that:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaint party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

Kolstad v. Am. Dental Ass'n, 527 U.S. at 534, 119 S.Ct. at 2124, 144 L.Ed.2d 494 (1999) (citing 42 U.S.C.A. § 1981a (West)).

Plaintiff's reliance on the Kolstad decision only undercuts his argument that the fact that Title VII allows for the recovery of punitive damages in certain situations means that punitive damages are recoverable under the MMA and the facts at issue here. Instead, it highlights the significance of the lack of the lack of any language in the MMA providing for punitive damages for violation of the MMA.

Finally, another case to which Plaintiff generally points to attempt to deny Willert summary judgment on punitive damages actually supports Willert's position on the lack of availability of punitive damages. See Field v. Philadelphia Elec. Co., 388 Pa. Super. 400, 565 A.2d 1170 (1989). At the outset, Field does not involve the MMA at all and pertains to facts and circumstances that arose years before enactment of the MMA. See Field, 565 A.2d 1170. Instead, Field involved only a common law wrongful discharge claim. See id. at 1179. Field does not address whether a plaintiff can recover punitive damages for a claim arising from a statute that does not provide for

7

the recovery of punitive damages and, if anything, the rationale in Field supports Willert's position that Plaintiff is not entitled to punitive damages here.

Further, in Field, the Court emphasized the importance of the alleged tortfeasor's knowledge and motive when determining the propriety of punitive damages. See id. at 1182-1183. The court explained that it "must analyze whether the complaint's allegations establish that the actor actually knew or had reason to know of facts which created a high risk of physical harm to plaintiff." Id. at 1182. "Further, the defendant must have proceeded to act in conscious disregard of or indifference to that risk." Id. When a defendant "does not realize the high degree of risk involved, even though a reasonable man in his position would, the mental state required for the imposition of punitive damages under Pennsylvania law is not present." Id. The Court further reasoned that "[i]n deciding whether punitive damages are assessable, the motive for the tortfeasor's act must be taken into account, not just the nature of the act itself." Id. at 1183. Finally, "[t]he imposition of damages to punish a civil defendant is appropriate only where the conduct is egregious." Id. The Field decision only underscores that punitive damages are not appropriate here where Willert did not know or have any reason to know that Plaintiff was a medical marijuana user before it terminated him.

Moreover, Willert is not "deliberately indifferent to the rights of medical marijuana patients," as Plaintiff argues. Willert's Human Resources Manager, Tammy Gillette, testified at her deposition in this matter that Willert has an Equal Employment Opportunity clause that applies to everyone, including medical marijuana patients. See Def.'s Counter-Statement at ¶ 17. Further, the only reason that Willert had not updated its written drug policy prior to Plaintiff's employment was because "COVID happened" and Ms. Gillette was forced to shift her focus to putting practices

in place to keep Willert's employees physically safe and protecting them from "from potentially getting a lethal virus." See id. at ¶ 14.

Thus, even if the MMA provided for the recovery of punitive damages (which it does not), the record here is devoid of any facts to establish the type of conduct that could justify punitive damages. Accordingly, summary judgment should be granted in favor of Willert on Plaintiff's claim for punitive damages.

### C. Conclusion

For all of the reasons set forth above and in the Brief in support of its Motion for Summary Judgment, Willert respectfully requests that the Court grant summary judgment in its favor.

Respectfully submitted this 4th day of October, 2021,

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By: */s/ Eileen Monaghan Ficaro*
Gregory S. Hyman, Esquire
Eileen Monaghan Ficaro, Esquire
*Attorneys for Defendant,*
*Willert Manufacturing Company, LLC*