UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW REYNOLDS,<br>       Plaintiff,<br>    v.<br><br>WILLERT MFG. CO., LLC,<br>       Defendant. | :<br>:<br>:      No. 5:21-cv-01208<br>:<br>:<br>: |

**O P I N I O N**
**Plaintiff's Motion for Summary Judgment, ECF No. 27 – Denied**
**Defendant's Motion for Summary Judgment, ECF No. 29 – Granted**

**Joseph F. Leeson, Jr.**                                                            **October 19, 2021**
**United States District Judge**

I.     **INTRODUCTION**

       This matter involves a claim of wrongful termination by Plaintiff Matthew Reynolds against his former employer, Defendant Willert Mfg. Co., LLC. Reynolds claims that his termination from Willert violated the Pennsylvania Medical Marijuana Act (PMMA). At the close of fact discovery, both parties filed cross-motions for summary judgment on this sole claim in the Complaint.

       Following a review of the factual record and the law governing PMMA claims, this Court concludes that Reynolds has failed to set forth facts sufficient to allow a reasonable jury to find in his favor. Accordingly, Reynolds' Motion for Summary Judgment is denied, and Willert's Motion for Summary Judgment is granted.

II.     **PROCEDURAL HISTORY**

       On February 4, 2021, Reynolds initiated this action with the filing of a Complaint in the Berks County Court of Common Pleas. *See* Not. of. Removal ("Not."), ECF No. 1. On March 12, 2021, Willert removed the action to the Eastern District of Pennsylvania. *See id.* Willert

filed its Answer to the Complaint on March 19, 2021.  *See* Ans., ECF No. 3.  At the close of fact discovery, both parties filed cross-motions for summary judgment.  *See* Pl.'s Mot. SJ, ECF No. 27; Def.'s Mot. SJ, ECF No. 29.  Following a series of responses and replies, the motions are ready for review.  *See* Def.'s Resp., ECF No. 30; Pl.'s Resp., ECF No. 33; Def.'s Reply, ECF No. 34.

**III.   UNDISPUTED MATERIAL FACTS**

From October 16, 2020 through November 5, 2020, Reynolds was employed by Willert as a maintenance manager.  *See* Def.'s Stmt. Undis. Facts ("DSUF") ¶ 1, ECF No. 29-2; Pl.'s Stmt. Undis. Facts Resp. ("PSUF Resp.") ¶ 1, ECF No. 32.  Reynolds' offer of employment with Willert was contingent on the successful completion of a drug test.  *See* DSUF ¶ 57; PSUF Resp. ¶ 57.  On October 28, 2020, Reynolds underwent the drug test, and he tested positive for "D-THC-marijuana metabolite 50/15."  *See* DSUF ¶ 61-62; PSUF Resp. ¶ 61-62.  Following the positive result, the testing center's medical review officer (MRO) contacted Reynolds to inquire into the reasons behind the result.  *See* DSUF ¶ 67; PSUF Resp. ¶ 67.  Reynolds testified that he told the MRO that he was a medical marijuana patient.  *See* DSUF ¶ 68; PSUF Resp. ¶ 68.  Reynolds also indicates that he told the person who performed the drug screen that he was a medical marijuana patient.  *See* DSUF ¶ 69; PSUF Resp. ¶ 69.

During his initial interview for the position, Reynolds did not disclose to Bryan Willert, part owner of Willert Mfg., that he was a medical marijuana patient.  *See* DSUF ¶ 70; PSUF Resp. ¶ 70.  Prior to starting work at Willert, Reynolds met with Bryan Willert and Jack Bonsky, the plant manager at Reynolds' location; however, he did not disclose that he was a medical marijuana patient at that time.  *See* DSUF ¶ 71-72; PSUF Resp. ¶ 71-72.  Reynolds' offer letter with Willert indicated that the offer was "contingent upon successful completion of a pre-

employment drug test." *See* DSUF ¶ 73; PSUF Resp. ¶ 73.  However, Reynolds did not disclose his medical marijuana status to anyone when he received that offer letter.  *See* DSUF ¶ 74; PSUF Resp. ¶ 74.

On November 5, 2020, Reynolds was terminated from Willert.  *See* DSUF ¶ 78; PSUF Resp. ¶ 78.  On that date, Bonsky called Reynolds to read him the contents of the termination letter.  *See* DSUF ¶ 79; PSUF Resp. ¶ 79.  After Bonsky finished reading the letter, Reynolds told him that he was a medical marijuana patient.  *See* DSUF ¶ 80; PSUF Resp. ¶ 80.  Notwithstanding, Reynolds was terminated.  *See* DSUF ¶ 78; PSUF Resp. ¶ 78.

## IV. LEGAL STANDARDS

### A. Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as

to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

      B.      **Wrongful Discharge under the PMMA – Review of Applicable Law**

The PMMA provides, in relevant part, that

> [n]o employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee regarding an employee's compensation, terms, conditions, location or privileges solely on the basis of such employee's status as an individual who is certified to use medical marijuana.

35 P.S. § 10231.2103(b)(1).

However, the PMMA does not require "an employer to make any accommodation of the use of medical marijuana on the property or premises of any place of employment," nor does it limit "an employer's ability to discipline an employee for being under the influence of medical marijuana in the workplace or for working while under the influence of medical marijuana." *See id.* § 10231.2103(b)(2). Finally, the PMMA does not require an employer "to commit any act that would put the employer or any person acting on its behalf in violation of Federal law." *See id.* § 10231.2103(b)(3).

The Superior Court of Pennsylvania held that the PMMA contains an implied private right of action for individuals who suffer an adverse employment action on account of their status as a certified user of medical marijuana. *See Palmiter v. Commw. Health Sys., Inc.*, --- A.3d ---, 2021 WL 3507795, at *6 (Pa. Super. Ct. 2021).

      **C.     Agency Relationship – Review of Applicable Law**

"Under Pennsylvania law, to establish the existence of an agency relationship, a party must show that: (1) there was a manifestation by the principal that the agent would act for it; (2) the agent accepted such an undertaking; and (3) the principal retained control of the endeavor." *Rychel v. Yates*, No. CIV.A. 09-1514, 2011 WL 1363751, at *10 (W.D. Pa. Apr. 11, 2011) (citing *Castle Cheese, Inc. v. MS Produce, Inc.*, Civ. A. No. 04-878, 2008 WL 43728567, at *8 (W.D. Pa. Sept. 19, 2008)). "The burden of establishing the existence of an agency relationship rests on the party making the assertion." *See id.* (citing *Goodway Mktg., Inc. v. Faulkner Advert. Assocs., Inc.*, 545 F. Supp. 263, 267 (E.D. Pa. 1982)).

"Agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." *See eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 21 (Pa. Super. Ct. 2002) (quoting *Basile v. H & R Block*, 761 A.2d 1115, 1120 (Pa. 2000)); *see also Walton v. Johnson*, 66 A.3d 782, 787 (Pa. Super. Ct. 2013) (noting courts "do not assume agency by a mere showing that one person does an act for another" (citing *Ferry v. Fisher*, 709 A.2d 399, 405 n.5 (Pa. Super. Ct. 1998))).

**V.    ANALYSIS**

Reynolds asserts that the undisputed facts show that his termination was motivated by his status as a medical marijuana patient, and accordingly, he seeks entry of judgment in his favor. On the other hand, Willert asserts that the uncontroverted facts indicate that the decision was not based on Reynolds' status, and it similarly seeks entry of judgment in its favor. Very few courts have had the opportunity to mark the boundaries of an employment discrimination claim brought under the PMMA. Accordingly, this Court begins by reviewing the PMMA to determine what conduct it prohibits and to what extent that conduct must relate to the adverse employment

action. Applying those principles to the undisputed facts of this matter, this Court concludes that a reasonable jury could not find that Reynolds was discriminated against solely on the basis of his status as a medical marijuana patient. For that reason, Reynolds' motion is denied, and Willert's motion is granted.

**A.     The PMMA prohibits only that discrimination that is based solely on an individual's status as certified to use medical marijuana.**

When sitting in diversity and reviewing a question of state law, as this Court does here, a district court must rely on the state's highest court for the interpretation of that state law matter. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Where the state's highest court has not yet addressed the question at hand, the district court must make its best effort to predict how the state's highest court would resolve the issue. *See Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009) (citing *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)).[1] In this instance, the Pennsylvania Supreme Court has not yet had the occasion to set the boundaries of the PMMA's prohibition of discrimination. Few Pennsylvania courts, appellate or otherwise, have analyzed this particular provision of the PMMA. Accordingly, this Court will review judicial opinions that have been issued in an effort to predict how the Pennsylvania Supreme Court would interpret this provision.

First, it must be determined what basis of discrimination is prohibited by the PMMA. Beginning with the language of the statute, the PMMA indicates that it prohibits discrimination "solely on the basis of such employee's status as an individual who is certified to use medical

---

[1]     In making this prediction, courts "must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *See Berrier*, 563 F.3d at 46 (quoting *Buffetta*, 230 F.3d at 637).

marijuana."[2]  *See* 35 P.S. § 10231.2103(b)(1).  Accordingly, based on the plain language, the statute prohibits discrimination based on the employee's *status* as a certified medical marijuana patient.  This interpretation is further supported by those few courts to comment on the issue.  *See Harrisburg Area Cmty. Coll. v. Pa. Hum. Rel. Comm'n*, 245 A.3d 283, 290 (Pa. Commw. Ct. 2020) ("[T]he MMA provides that employees cannot be discriminated against due to their *status* as certified users of medical marijuana, but does not require that an employer provide an accommodation therefor." (emphasis added)); *Hundell*, 2020 WL 5749924, at *6 (concluding plaintiff stated a claim under PMMA law where she "*disclosed her status as a cardholder*, failed a drug test at work and then was fired the same day she recertified her medical marijuana card" (emphasis added)).

Moreover, a comparison of the PMMA to other state statutes prohibiting similar discrimination provides further evidence that the legislature intended the application of the PMMA to be limited to protecting the individual's "status."  *Compare* 35 P.S. § 10231.2103(b)(1) (prohibiting discrimination "solely on the basis of such employee's status as an individual who is certified to use medical marijuana"), *with, e.g.*, A.R.S. § 36-2813(B)(1)-(2) (explicitly prohibiting discrimination based on *either* an individual's "status as a cardholder" *or* "a registered qualifying patient's positive drug test"), *and* Minn. Stat. § 152.32(3)(c)(1)-(2) (explicitly prohibiting discrimination based on *either* an individual's "status as a patient enrolled in the . . . program" *or* "a patient's positive drug test").  Unlike the PMMA, the relevant provisions from both Arizona and Minnesota explicitly protect against discrimination on the basis of a positive drug test, in addition to one's "status" as a cardholder.  *See* A.R.S. § 36-

---

[2]   Individuals who are certified to use medical marijuana are sometimes referred to as "cardholders."  *See Hundell v. Thomas Jefferson Univ. Hosps., Inc.*, --- F.3d ---, 2020 WL 5749924, at *6 (E.D. Pa. Sept. 25, 2020).

2813(B)(1)-(2); Minn. Stat. § 152.32(3)(c)(1)-(2).  That the PMMA only enumerates "status" and omits any other protected bases is further evidence that this provision of the PMMA is intended to only protect status.  Accordingly, in light of the plain reading of the statute, the limited available case law interpreting the statute, and the comparison of the PMMA to statutes of other states, this Court predicts that the Pennsylvania Supreme Court would interpret the PMMA to protect only one's status as a medical marijuana cardholder.

Next, this Court must determine the causal connection required by the PMMA between the employee's status as a cardholder and the adverse employment action.  As with the matter above, the Pennsylvania Supreme Court has not yet had the opportunity to address this issue,  nor does it appear that this issue has been addressed by Pennsylvania's trial or appellate courts.  Accordingly, this Court turns to statutory interpretation in an effort to predict how the Pennsylvania Supreme Court would interpret this facet of the PMMA.

Beginning with the plain language of the PMMA, the provision prohibits discrimination that is "*solely on the basis* of such employee's status" as a cardholder.  *See* 35 P.S. § 10231.2103(b)(1) (emphasis added).  From this language, the PMMA can be reasonably interpreted as prohibiting adverse action that is taken exclusively, or solely, on the basis that the employee is a cardholder.  A comparison of the PMMA and Pennsylvania's Human Relation Act (PHRA) further supports this interpretation.  Whereas the PMMA prohibits discrimination "solely" on the basis of one's status as a cardholder, the PHRA prohibits discrimination "because of" a series of protected characteristics.  *Compare* 35 P.S. § 10231.2103(b)(1), *with* 43 P.S. § 955(a).  In delineating the causal connection required by the PHRA for discrimination claims, courts have interpreted § 955(a) to require a plaintiff to show that discrimination was a motivating factor.  *See Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013) ("So-

called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."); *see also Dreibelbis v. County of Berks*, 438 F. Supp. 3d 304, 314 (E.D. Pa. 2020) (noting Title VII and the PHRA "are 'interpreted consistently' with one another, and each 'ha[s] the same standard for the determination of liability.'" (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012))). However, given the legislature's choice of differing language between the PMMA and PHRA, the motivating factor test would seem inappropriately applied to claims brought under the PMMA. Unlike the PHRA, the PMMA does not prohibition discrimination "because of" cardholder status, but rather it requires a plaintiff to show that the discrimination was "solely" on the basis of his or her status. Put another way, the PMMA appears to require a but-for causal connection between the employee's status and the resultant adverse employment action. Accordingly, in light of the plain language of the PMMA and its comparison to the PHRA, this Court predicts that the Pennsylvania Supreme Court would require a plaintiff to show that but for his status as a cardholder, he would not have suffered an adverse employment action.

**B.    Reynolds fails to present evidence sufficient to show that he was terminated solely because of his status as a medical marijuana cardholder.**

Reynolds argues that Willert terminated him on the basis of his status as a registered medical marijuana patient. In order to state a claim, Willert must show (1) he was discriminated against on the basis of his status as cardholder, and (2) that but for his status, he would not have been terminated. *See* 35 P.S. § 10231.2103(b)(1). With respect to both elements, Willert sufficiently shows that there is no dispute of material fact. Moreover, Reynolds fails to provide affirmative evidence sufficient to create a genuine dispute of material fact. Accordingly, a

reasonable jury could not find that Reynolds was discriminated against solely on the basis of his status, and judgment is entered in Willert's favor.

### 1. Reynolds fails to show that he was discriminated against on the basis of his status.

In order for a reasonable jury to find in his favor, Reynolds must be able to show that he was discriminated against based on his status as a medical marijuana patient. To do so, Reynolds must show that Willert knew of his status at the time that he was terminated. As indicated above, it is undisputed that Reynolds did not directly inform Bryan Willert or Bonsky about his status as a registered medical marijuana patient prior to his termination. *See* DSUF ¶ 70-72; PSUF Resp. ¶ 70-72. Instead, Reynolds argues that his disclosures to the drug testing site—Pottstown Hospital—and the MRO were sufficient to place Willert on notice because Willert and the Hospital share an agency relationship. *See* Pl.'s Resp. 9. Therefore, Reynolds argues, the Hospital's knowledge of Reynolds' status should be imputed to Willert. *See id.*

Notwithstanding, Reynolds fails to establish any sort of agency relationship between Willert and the Hospital. Although Willert patronizes the Hospital's drug testing services, this alone does not create an agency relationship between Willert and the Hospital. *Walton*, 66 A.3d at 787 (indicating agency not established by "mere showing that one person does an act for another" (citing *Ferry*, 709 A.2d at 405 n.5)). Rather, an agency relationship only exists where there is an agreement that some fiduciary relationship be created between the two parties. *See eToll, Inc.*, 811 A.2d at 21 (quoting *Basile*, 761 A.2d at 1120). Reynolds provides no evidence that Willert's patronage of the Hospital's services constitutes a fiduciary relationship between it and the Hospital. To consider this an agency relationship would be to consider nearly all patronage of services an agency relationship. Thus, Reynolds has failed to establish an agency

relationship between Willert and the Hospital sufficient to impute the Hospital's knowledge of Reynolds' status to Willert.

Moreover, Reynolds does not point to any facts that would evidence that the MRO told Willert about his status as a medical marijuana patient. Reynolds himself indicates that he does not believe the MRO told Willert of his status as a medical marijuana patient. This fact is corroborated by the deposition testimony of Willert Human Resources Manager Tammy Gillette. In her deposition, Gillette indicated that when the MRO is provided with a valid excuse for a positive test result, they will return a *negative* result to the company who ordered the drug test. *See* Pl.'s Resp. at Ex. 13, Gillette Dep. 55:19-23, ECF No. 33-2. That the MRO provided Willert a positive test result is further evidence that Willert lacked actual knowledge of Reynolds' status. Accordingly, Reynolds has failed to show an agency relationship between Willert and the Hospital or otherwise show that the Hospital or MRO provided Willert with any information regarding Reynolds' status.

On these undisputed facts, Willert did not know of Reynolds' status as a medical marijuana patient at the time that it made the initial decision to terminate his employment. Accordingly, a reasonable jury could not find that Willert's decision to terminate Reynolds was based on his status as a registered medical marijuana patient. Therefore, summary judgment in Willert's favor is appropriate.

### 2. Reynolds fails to show that his status as a cardholder was the sole cause of his termination.

Even assuming, *arguendo*, that Reynolds could show his termination was motivated by his status, Reynolds has failed to provide facts that would allow a reasonable jury to find that his status was the *sole* basis for his termination.

Reynolds attempts to argue that the decision to terminate him was "ratified" by Bonsky following the initial phone call during which Bonsky learned of Reynolds' status. In particular, Reynolds argues that he told Bonsky of his cardholder status over the phone. Reynolds asserts that Bonsky then called Gillette to inquire into any effect the status may have on the termination decision. Thereafter, Bonsky contacted Reynolds to let him know the termination stood. Reynolds argues that this "ratification" creates a genuine dispute regarding whether the final termination was based solely on his status. However, this argument is unavailing for two reasons. First, the undisputed facts indicate that Willert did not know of Reynolds' status at the time they made the initial decision to terminate him. That means that, at the outset, Reynolds' termination was necessarily based on reasons beyond his status, as his status was not even within the contemplation of Willert at the time. Second, even if this Court were to consider Reynolds' "ratification" theory, Reynolds provides no evidence that Willert abandoned its prior reasons for terminating him and adopted his cardholder status as the sole reason for his termination. Quite the opposite, Reynolds quotes Gillette as stating that news of Reynolds' status *after* the initial decision to terminate was already made "doesn't make any difference" to Willert's decision. *See* Pl.'s Resp. 8.

On these undisputed facts, a reasonable jury could not find that the sole reason for Reynolds' termination was his status as a cardholder. Accordingly, summary judgment is appropriate in Willert's favor.

## VI.    CONCLUSION

This Court predicts that the Pennsylvania Supreme Court would interpret the PMMA to prohibit discrimination on the basis of one's status as a cardholder, so long as it is the sole cause of the adverse employment action. Following a review of the undisputed facts, a reasonable jury

could not find that Reynolds was discriminated against based solely on his status as a medical marijuana cardholder.  Accordingly, Reynolds' motion for summary judgment is denied, and Willert's motion for summary judgment is granted.

   A separate Order follows.

                   BY THE COURT:


                   */s/ Joseph F. Leeson, Jr.*
                   JOSEPH F. LEESON, JR.
                   United States District Judge